[PHILADELPHIA, MARCH 29, 1833.]

## PRITCHETT and Another *against* JONES.

### IN ERROR.

An agreement to sell a chattel in an unfinished state, to be delivered at a future time, is an executory contract, for a breach of which an action for damages lies; but it does not pass the property in the chattel.

Where, therefore, *A.* on the thirty-first of *July*, 1828, in consideration of a pre-existing debt, contracted to sell to *B.* a quantity of hides and skins, then in the vats of the vendor undergoing the process of tanning, but which were then capable of being removed, to be delivered on or before the twelfth of the following *November*, some of them at fixed prices, and the rest at the market price, and to be passed to the credit of the vendor to settle his account, it was held, that no immediate property vested in the vendee, and that the leather was liable to execution as the property of the vendor, notwithstanding the transaction was open, and there was proof that it had long been the course of business for curriers in the city to purchase leather of tanners in the country, while in process of manufacture, to be delivered when tanned, and that advances were frequently made on such purchases.

WRIT of error to the Court of Common Pleas of *Chester* county, in an amicable action of trespass, *vi et armis*, entered into between the plaintiffs in error, *William & James Pritchett*, who were also plaintiffs below, and *Jonathan Jones*, the defendant in error, late sheriff of *Chester* county, to recover damages for seizing and selling under execution, a quantity of leather, in process of manufacture, as the property of *Augustin Williamson*, which the plaintiffs claimed as their property.

From the evidence given on the trial, it appeared, that the plaintiffs were curriers residing in the city of *Philadelphia*, and *Augustin Williamson* a tanner, residing in *Chester* county.  There had been dealings between them for sometime, and in *July*, 1828, *Williamson* was indebted to the plaintiffs in the sum of one thousand and ninety-eight dollars and ninety-eight cents.  They called on him at his tan-yard for payment, and being unable to pay the debt in cash, it was proposed by the plaintiffs to take leather in satisfaction of it, and he agreed to let them have it.  They proposed to get wagons, and haul it away immediately, but *Williamson* objected, as wagons could not be procured at that season of the year.  It was then proposed by

(Pritchett and another *v.* Jones.)

the plaintiffs, to send up hands to tan out the leather, which was then unfinished in the vats, but this *Williamson* also objected to, as he was unable to accommodate the hands.

An agreement was then entered into in the following terms *viz.* :

*Waggontown, July* 31, 1828.

" I have this day sold *William & James Pritchett*, the following described leather, now in my tan-yard ; nineteen and a half hides of harness, and nineteen and a half hides of Spanish sole, has been handed over to them, which they have marked and returned me to be tanned, which is to be a sample of the balance.

" Ninety-five and a half hides harness, to be delivered in the rough, at twenty cents per pound.

" One hundred and six hides Spanish sole, at twenty cents.

" Seven dozen calf skins, at market price.

" Five chaise hides, four dollars and fifty cents.

" All to be delivered in *Philadelphia*, on or before *November* 12th, 1828, and to be passed to my credit to settle my account.

　　　　　(signed)　　　　　*Augustin Williamson.*

" Received one dollar on account.

　　　　　(signed)　　　　　*Augustin Williamson.*"

This agreement did not comprise the whole stock of *Williamson*, who had other leather in his yard, unfinished, besides some which was tanned out. This was an open, not a secret transaction. It took place in the presence of the journeymen, and *Williamson*, who was examined as a witness on the trial, thought he communicated it to his sister *Phœbe* (one of the execution creditors)who kept house for him at the time. Both *Pritchett* and *Williamson* spoke of it publicly and repeatedly to different neighbours soon after it took place, and another execution creditor heard of it by letter from *Philadelphia.*

On the twenty-third of *August,* following the agreement, *Williamson* gave a bond, accompanied by a warrant of attorney, to *Samuel Hatfield*, conditioned for the payment of one hundred and fifty-three dollars, for a debt, the whole of which, except ten dollars or less, was contracted prior to the sale to the *Pritchetts.* On the day of the date of the bond, judgment was entered upon it, and execution issued on the first of the following *September.*

On the twenty-second of *August*, 1828, he gave a similar bond to his sister *Phœbe Williamson*, to secure the payment of four hundred and twenty-five dollars, of which, the sum of two hundred and eighty dollars and ninety-four cents, was for money advanced long prior to the sale to the *Pritchetts,* and one hundred and forty-five dollars were added to cover debts he owed to other people, contracted also prior to the sale, and which his sister afterwards paid off. Judgment was entered on this bond the fifteenth of *September*, 1828, and execution issued on the same day.

On the eleventh of *September*, 1828, he gave a similar bond to *David Read* and *John Pearce,* for three hundred and seventy-four

(Pritchett and another *v.* Jones.)

dollars and thirty-five cents. This debt was also contracted prior to the sale to the *Pritchetts.* The judgment was entered on the twelfth of *September*, 1828, and on the same day execution issued.

Under these several executions, the defendant, on the fifteenth of *September*, 1828, levied on the property in question, while in the vats in *Williamson's* tan-yard, and before the process of manufacture was completed, together with other property, personal and real.

The defendant was notified that the property belonged to the plaintiffs, and had been purchased by them while in the process of manufacture in *Williamson's* yard, and he was forbidden to sell it. He was indemnified, however, and proceeded with the sale. Under these executions he justified his proceedings.

The judgment in favour of *Phœbe Williamson,* was proved by her brother *Thomas Williamson* to have been procured by him in *West Chester,* without her knowledge, consent or participation. She resided in the house with her brother *Augustin* at the time of the sale to the *Pritchetts*, passed through the room while they were writing the bill of sale, and knew of its existence, but it did not appear that she at any time objected to it.

It was proved by numerous witnesses at the trial, that it had long been the course of business for curriers in the city to purchase leather of tanners in the country, while in process of manufacture, to be delivered when tanned, and that advances were frequently made on such purchases.

The plaintiffs' counsel requested the court to charge the jury as follows, *viz.* :

1. There is no legal objection to an absolute sale of leather, undergoing a process of manufacture, to be delivered when finished.

2. The possession of the leather as left in this case, after the sale, was consistent with the stipulations of the bill of sale, and not fraudulent, because it was an article undergoing a process of manufacture, to be delivered when finished.

3. The possession as left in this case, was conducive to a fair object the parties had in view, which has been shewn to, and is approved of by the court, to wit : the completion of the manufacture.

4. It was not necessary here that there should have been an actual removal of the wet hides, and the sale was attended with every formality which the law requires in such a case.

5. The consideration expressed on the face of the instrument, that the leather should go to discharge a precedent debt; was good and sufficient in law, and the written instrument is not to be explained or contradicted by parol testimony, unless it goes to show actual fraud in procuring it, or mistake in the execution of it.

6. The court is requested to say, whether there has been any evidence given in this case, of either *fraud* or *mistake,* such as will authorise the jury to look beyond the instrument itself for the consideration.

(Pritchett and another *v.* Jones.)

7. Although the object of the purchasers may have been to secure a precedent debt, still, if the transaction was according to the usual course of business between curriers in the city and tanners in the country, the possession was not therefore *fraudulent.*

8. The bond from *Augustin Williamson* to his sister *Phœbe*, was taken without her request, direction, or participation at the time, and if the jury believe from the evidence, that prior to her knowledge of this transaction, she knew of and had assented to the sale to Messrs. *Prichetts*, she is bound by it.

The court reviewed the facts of the case, explained the law arising upon them to the jury, and answered the propositions submitted to them. It is unnecessary to insert the charge at length. Its result was stated by the court in conclusion as follows:

" Upon the whole case, the opinion of the Court therefore is, that this contract of sale entered into the 31st *July,* 1828, not being accompanied or followed by a change of possession, is to be pronounced by the policy of the law fraudulent and void as respects subsequent execution creditors; although it may be perfectly fair and upright between the parties to it: but because the possession was permitted to remain in the hands of *Williamson,* the former owner and alleged vendor, without any change in manner or appearance to the world, and to the other creditors, after or before the sale—the goods were not protected from the executions of the other creditors, the sheriff is justified, and the verdict should be for the defendant."

The jury, nevertheless, gave a verdict for the plaintiffs for one thousand and sixty dollars, which the court set aside. On the second trial, by agreement in writing, the evidence given on the former trial was read by the President Judge to the jury, the same points were made, and the same charge delivered, the cause being submitted without argument, and a verdict was taken for the defendant.

The plaintiffs' counsel excepted to the charge, and requested the court to file it of record, which was accordingly done.

*Dillingham* and *Chauncey* for the plaintiffs in error.—It deserves to be remarked, that no one of the debts for which execution issued against the property in question in this case, was contracted by means of a false credit, nor was the bill of sale to the plaintiffs in error given to defeat any suit, judgment or execution, or in any other way to delay, hinder or defraud creditors. It was a sale of part only of the debtor's stock, openly made, accompanied by a bill of particulars, and attended with symbolical delivery of possession. It comes within an exception to the broad rule as to possession, which is as well established as the rule itself. The object, scope and meaning of the stat. of 13 *Eliz.* c. 5, is to prevent conveyances intended to delay, hinder, and defraud creditors. *Rol. Dig.* 295. In *Twynes' case,* 3 *Co. Rep.* 80, which is the leading one on this subject, the bill of sale was given

(Pritchett and another v. Jones.)

after the suit had been commenced by another creditor, expressly for the purpose of defeating him. No one of the six reasons given in support of the decision of that case, applies to this. There, the conveyance was of the donor's whole property; the donor continued in possession, and by reason thereof traded with others, and deceived and defrauded them; it was a secret transaction; it was made after suit had been brought by another creditor; a trust existed between the parties, and it contained an unusual clause, setting forth the honesty of the transaction. In the case now under consideration, a good and sufficient reason for permitting the possession to remain in the vendor, is expressed in the instrument and shown to exist, to rebut the presumption of legal fraud. The cases of the strictest class are all satisfied by this exception, and we have authorities in our favour from *Bucknall* v. *Royster, Prec. in Ch.* 285, in 1709, to *Clow* v. *Woods*, 5 *Serg. & Rawle,* 275, in 1819. The cases on this subject were all ably reviewed in *Clow* v. *Woods,* and in *Sturtevant* v. *Ballard,* 9 *John.* 337; and more recently by Chancellor KENT, in his *Commentaries.* 2 *Kent's Com.* 515. 524; and there is no authority to be found in which the exception is not distinctly recognised, that where a good and sufficient reason for postponing the delivery of possession, is expressed in the instrument and shown to the court, a presumption of fraud does not arise, and the conveyance is good. *Stone* v. *Grubbam, Buls.* 225. *Meggot* v. *Mills,* 1 *Ld. Ray.* 286. *Cole* v. *Davies, Id.* 724. *Ryall* v. *Rolle,* 1 *Atk.* 165. *Cadogan* v. *Kennet, Cowp.* 432. *Edwards* v. *Harben,* 2 *T. R.* 587. *Stuart* v. *Lombe,* 5 *Eng. Com. L. Rep.* 167. *Bull. N. P.* 258. *Hamilton* v. *Russell,* 1 *Cranch,* 309. *United States* v. *Hooe,* 3 *Cranch,* 88. *Whipple* v. *Foot,* 2 *John. R.* 418. *Barrow* v. *Paxton,* 5 *John. R.* 261. *Vredenbergh* v. *White,* 1 *John. Cas.* 156. *Allen* v. *Smith,* 10 *Mass. R.* 308. *Jewitt* v. *Wonnor,* 12 *Mass. R.* 300. *Water* v. *M'Clellan,* 4 *Dall.* 208. *Wilt* v. *Franklin,* 1 *Binn.* 502. *Dawes* v. *Cope,* 4 *Binn.* 265. *Martin* v. *Mathiot,* 14 *Serg. & Rawle,* 214. *Babb* v. *Clemson,* 10 *Serg. & Rawle,* 428. *Welsh* v. *Bekey,* 1 *Penn. R.* 57. *Herron* v. *Fry,* 2 *Penn. R.* 263. *Snowden* v. *Warder,* 3 *Rawle,* 101.

*Bell* and *J. Sergeant,* for the defendant in error.—The general rule undoubtedly is, that a sale of chattels, unaccompanied by possession, is a fraud *per se,* and void against creditors, and mainly for this reason, that possession of chattels is the only or chief evidence of ownership. Although the language of the stat. of 13th *Elizabeth,* does not, in terms, include such a case, yet it has always been held to extend to it, and even without the statute, the common law provides for it. So early as 22 *Ed.* 3, when the comparative value of personal property was small, the rule was recognised and acted upon. Whether, however, this position be correct or not, it is certain, that ever since *Twyne's Case,* 3 *Co. R.* 80, the courts have looked with great jealousy upon a sale of chattels unaccompanied by possession, their inclination being rather to enlarge than to restrict the

(Pritchett and another *v.* Jones.)

rule. 3 *Ba. Ab.* 310. *Cadogan* v. *Kennet, Cowp.* 434. *Ryall* v. *Rowles,* 1 *Atk.* 167-8. *Babb* v. *Clemson,* 10 *Serg. & Rawle,* 428. *Martin* v. *Mathiot,* 14 *Serg. & Rawle,* 214. Even to a mortgage of a chattel, delivery of possession is essential. *Portland Bank* v. *Stubbs,* 6 *Mass. Rep.* 425. *Lamb* v. *Dorant,* 12 *Mass. Rep.* 56. 59. There is a class of cases including trusts, created by marriage settlements, as in *Cadogan* v. *Kennet,* and where the vendor becomes the agent of the vendee, under peculiar circumstances, as in *Bucknall* v. *Roiston, Prec. in Ch.* 285, not within the purview of the statute, but the reason of the exception is, that the retention of possession in these cases was absolutely necessary, and constituted the motive for entering into the contract. An attempt has also been made to except conditional sales; but it has been defeated by the decision of *Clow* v. *Woods,* 5 *Serg. & Rawle,* 275, and other cases. Another class of cases, is, where the sale is absolute, but the continued possession of the vendee is consistent with the deed. Some of the courts in this country, following the distinction made by Judge BULLER, in *Edwards* v. *Harben,* 2 *T. R.* 587, have held, that such a sale, where possession was to be delivered in future, was not in itself void as against creditors. *Dawes* v. *Cope,* 4 *Binn.* 265. *Hamilton* v. *Russell,* 1 *Cranch,* 309. The doctrine of *Edwards* v. *Harben,* has been, it is believed, departed from in *England,* and certainly in this country, in the more recent cases, at least so far as the distinction is made to depend upon the simple circumstance of a stipulation for the retention of the possession being inserted in the contract. The present is the case of an absolute sale of chattels, for the purpose of securing a pre-existing debt, the parties having no other object in view. The possession was to be delivered at a future period. The continued possession of the vendor in such a case, was against the policy of the law, which requires transfer of possession as well as contract. It is not enough to render a contract of sale valid, that it contain a stipulation, that the vendor shall retain the possession. There must be some sufficient motive for such retention, of which the court is to judge. *Sturtevant* v. *Ballard,* 9 *John. R.* 339. "The retention of the possession," it is laid down in *Clow* v. *Wood,* 5 *Serg. & Rawle,* 278, " must be for a purpose, fair, honest, and absolutely necessary, or at least essentially conducive to some fair object the parties had in view, and which constituted the motive for entering into the contract." This principle is universally recognised as law. *Martin* v. *Mathiot,* 14 *Serg. & Rawle,* 214. *Welsh* v. *Bekey,* 1 *Penn. R.* 57. *Herron* v. *Fry,* 2 *Penn. R.* 263. *Commonwealth* v. *Stremback,* 3 *Rawle,* 341. The object of the parties here, was merely to secure a debt due from *Williamson* to the plaintiffs, and consequently the possession of the vendor was not essentially conducive to the object the parties had in view, and still less was it " absolutely necessary." How far a *bona fide* purchase, in the usual course of business, of an article undergoing a process of manufacture, which could not be removed without material loss, and of which the possession

34

therefore remains with the vendor, would be valid, it is not necessary to consider, because this is not such a case. In the case of *Clow* v. *Woods*, the court seem to have taken it for granted, that the hides could not be removed without deterioration; but in this case it is shown that they might have been, and afterwards actually were removed, before the completion of the manufacture. As to symbolical delivery, which is said to have taken place in this case, that is only available, where peculiar circumstances preclude the possibility of actual possession. *Cunningham* v. *Neville,* 10 *Serg. & Rawle,* 201. Finally, this was a secret sale, the property remaining after the sale in precisely the same situation as before, the vendor exercising every act of ownership over it. To permit it to stand, would be to retrace the progressive steps of ages.

The opinion of the court was delivered by

GIBSON, C. J.—It certainly seemed to us in *Clow* v. *Woods*, that the inconvenience of removing an article contracted for in the hands of the manufacturer, would so account for retention of the possession for a period sufficient to complete the process, as to rebut the inference of fraud; and as that case is the first of the series in our courts, it should not be disturbed but on grave consideration. The ground on which the cause was decided there, however, is not the one on which the question is to be determined here; and on mature reflection, I am convinced, that it was unnecessarily and improperly conceded. The objection to the title lies deeper, perhaps, than even the legal imputation of fraud, resting, as it seems to do, in the very essence of the contract, which, to vest a specific property in the subject of it, must be a contract executed. The distinction between a sale which transfers the ownership, and an agreement to sell and deliver at a day certain, which gives but an action for the breach of it, is a broad one, distinctly understood, and practically observed in the current transactions of business; and I am at a loss to see how its effect can be evaded in a case like the present. Every agreement for a subsequent delivery is essentially executory. The theory of those who maintain that the title passes in the mean time, is, that the artisan remains in possession but as the servant of the customer, the labour and materials to be added by him, being the subject of separate compensation; consequently, that there is, in fact, a present execution of the contract. In point of policy, this would evidently be objectionable, because no purchaser of a finished article in the usual course, would be secure of the title; and in point of reason, it is forced and unnatural, because it is founded on an hypothesis false in fact, that the value of the article in its unfinished state, is the basis of the contract. Was it so considered in the present case, or in any other to be found in the books? The parties dealt expressly in reference to the price which the leather would fetch when fit for the market; and having treated in reference to a future condition of the article, a future price and a future delivery, the contract was necessarily exec-

(Pritchett and another *v.* Jones.)

utory, as every sale of an unfinished article must be when not sold and delivered as such.    Unquestionably, the property in an article made to order, passes but by the delivery of it, because at the time of the order, which is the date of the contract, there was no property in any thing to pass; and it will scarcely be pretended, that the accidental existence of a part of the work at the time, would give the customer a specific right to the whole.    For instance, an order to finish a coach whose parts were sufficiently formed to individuate it as a whole, would be obnoxious to the objection just stated, as regards specific property in the labour and materials to be added; and it would not vest a specific property in the work on hand, because it was not that, but a finished coach, which was the subject of the contract.    Here, however, it is said, that the hides required but to be left a few months longer in the vats in order to absorb the tannin from the bark; and in this respect, they have been likened to grain growing, which is a subject of present sale.    The evidence proved, however, that labour was still to be expended on them; and beside, a growing crop draws its increase from a process of nature, while hides in a tannery draw theirs from a process of art, which has the peculiar effect of changing the specific character of its subject.    The grain, too, is contracted for at its present value, affected, as it must necessarily be, by the prospect of its natural increase, just as a growing animal is affected by the same prospect; and the contract is executed by delivery, as far as it is susceptible of it.    But what seems conclusive in all cases of retained possession for purposes of completion, is, that the customer would not be bound to accept the article if it were injured by unskilfulness, or finished in an unworkmanlike manner; and the contract being thus shown to be executory, it would follow that the customer has no property in the thing which he could enforce even against the seller.    What then, is the case on the record?  The contract was made the thirty-first of *July*, and the property was to be delivered, not when the process should be finished, but on the twelfth of *November* ensuing; so that the postponement of delivery not being graduated to the actual exigency, could not be justified even by the exception in *Clow* v. *Woods*. Independently of that, it appears, that the hides were susceptible of immediate delivery, as the buyer was willing to remove them at his risk, or send workmen to finish them where they were; and the rejection of his proposal to do so, evinced but the determination of the owner to enter into no contract that would presently divest him of the property.    Even the price was not definitively fixed; for the skins were to be delivered at the market value, and the seller was to have the benefit of the intermediate rise, if any should occur, even as regards the hides.    In the contemplation of both parties, therefore, all was executory.    But even had they contracted for the article at the value of it in its unfinished state, the consequence would have been the same; for no form of dealing will turn what is essentially executory into a contract executed, and an apparent eva-

(Pritchett and another *v.* Jones.)

sion of the rule which requires a change of the possession, as that would palpably have been, would itself be an index of fraud. Apart from all this, however, it clearly appeared from the testimony, if believed, that both the hides and the skins were susceptible of removal without inconvenience or loss; and if a present sale were intended, it it should have been attended with present delivery. On the general principle of *Clow* v. *Woods,* then, the judge was right in charging that the contract did not vest the title in the plaintiff.

Judgment affirmed.