## CHARLES C. WHITNEY v. JERRY R. HALL.

*Sale—Passing of title—Chattel mortgage—Description of property
—Evidence.*

1. In this case it is held that the title to the logs in dispute did not pass to the vendee until they were delivered on the cars, as provided in the contract of sale, and that the refusal of the vendee to receive them, and make the payment agreed to be made on such delivery, amounted to a repudiation of the contract.

2. An unambiguous description of saw-logs in a chattel mortgage cannot be extended by the parol testimony of the mortgagor or mortgagee, in a contest with third persons, so as to cover logs not mentioned in such description.

Error to Bay. (Cobb, J.) Argued June 11, 1890. Decided October 31, 1890.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. McDonell,* for appellant, contended:

1. In support of the claim that the description of the logs in the mortgages cannot be enlarged by parol testimony, counsel cited *Curtis v. Phillips,* 5 Mich. 112; *Willey v. Snyder,* 34 Id. 60; *Hurst v. Beaver,* 50 Id. 617; *Cass v. Gunnison,* 58 Id. 115.

2. It was for the court to determine the legal import of the contract; citing *Stearns v. Vincent,* 50 Mich. 209.

3. It was error for the court to leave to the jury as a question of fact whether the taking of the drafts operated as payment, there being nothing in the testimony to take the case out of the general rule on that subject; citing *Burrows v. Bangs,* 34 Mich. 304; *Boom Co. v. Sanborn,* 36 Id. 358; *Blanchard v. Boom Co.,* 40 Id. 566; *Brown v. Dunckel,* 46 Id. 30; *Iron Works v. Hall,* 64 Id. 165; *McMorran v. Murphy,* 68 Id. 248.

4. Inasmuch as the contract expressly provides for payment while the logs are on the skid-ways, the title did not pass; citing Hilliard, Sales, 37; *Conway v. Bush,* 4 Barb. 564.

5. The contract is one of entirety, and a refusal to accept *all* of the logs avoided the contract; citing *Railroad Co. v. Van Dusen*, 29 Mich. 444; *Hanley v. Walker*, 79 Id. 607; *Miner v. Bradley*, 22 Pick. 457; and the contract was also terminated by a refusal to make the first payments; citing *Jenness v. Shaw*, 35 Mich. 20.

*T. A. E. & J. C. Weadock*, for plaintiff, contended:

1. A draft or note should be regarded as payment whenever it appears that such was the intention of the parties, which may be shown by their acts and conduct as well as by proof of an express promise or agreement; citing 2 Pars. Cont. 624; *Hotchin v. Secor*, 8 Mich. 494; *Sage v. Walker*, 12 Id. 425; *Brown v. Dunckel*, 46 Id. 32; *Iron Works v. Hall*, 64 Id. 165; *Burton v. Wells*, 30 Miss. 688; *Patten v. Hood*, 40 Me. 457; and in construing a contract the situation of the parties, its subject-matter, and the circumstances attending its execution may be considered if the language is not free from doubt; citing *Mathews v. Phelps*, 61 Mich. 327.

MORSE, J. In 1888, one W. G. Cogswell and Rhodes & Lynch entered into the following contract:

"This agreement entered into the 22d day of December, A. D. 1888, between W. G. Cogswell, of Pinconning, Bay county, Mich., of the first part, and John T. Lynch and C. H. Rhodes, of the same place, of the second part, witnesseth:

"That, for the consideration hereinafter set forth, the said parties of the second part agree to cut and deliver upon the line of the Saginaw Bay and Northwestern Railroad all the merchantable pine timber upon section 17, town 17 north, range 3 east.

"Said first party agrees to pay the said second party the sum of four dollars per thousand delivered on said railroad, and the further sum of one dollar per thousand when said second party delivers the said logs upon the cars of said railroad; the logs now on skids along said railroad to be scaled by the 15th day of January, 1889, by A. H. Cogswell and George Walstead, said logs now on skids,—3,500 in number,—to be estimated by the said John T. Lynch and A. H. Cogswell, and the sum of four dollars per thousand to be paid by the said first party to the said second party upon such estimate.

"And it is further agreed by the said parties hereto

that on 'the 15th and 30th of each succeeding month a scale of all logs got out and delivered as above by the second party, they shall be paid for at said rate of four dollars per thousand, said second party to furnish trains and load said logs upon said cars, and to be delivered after the 10th day of January next, as may suit the convenience of the said second party. All logs mentioned in contract to be delivered by said second party on cars by the 15th day of March, 1889."

The plaintiff in this suit brings trover for a certain quantity of logs cut under this contract. He claimed title on the trial under two chattel mortgages given by Cogswell,—one to McCausland & Co., of Saginaw, and a subsequent one executed by Cogswell to the Commercial Bank of Bay City. The last mortgage was foreclosed by the sale of the property named therein April 15, 1889, at which sale the plaintiff purchased the logs he claims in this suit. The McCausland mortgage was assigned to the Commercial Bank of Bay City before the commencement of this suit. Plaintiff holds the title for the bank. The defendant claims title to the logs by purchase from Rhodes & Lynch. The material question in issue, therefore, was, who was the owner of the logs in question at the time Hall got possession of them, the plaintiff, claiming under Cogswell, or Rhodes & Lynch? The verdict of the jury was in favor of the plaintiff.

There is no question but that the logs before they were cut belonged to Rhodes & Lynch, the timber being their property. The proofs show, in accordance with the contract, that at the time it was made there were about 3,500 pieces,—logs,—on the skid-ways; that an estimate was made of the amount of feet in these logs; and that Cogswell made a draft in favor of Rhodes, upon Dwight & Co., of Detroit, Mich., for $1,400, on account of these logs, and handed the same to Rhodes. He also afterwards gave drafts to Rhodes on the same parties as fol-

lows: January 17, 1889, $1,000; February 16, 1889, $600. The drafts of $1,400 and $1,000 were indorsed by Rhodes, and discounted at the Bay City Bank, where he kept an account. They were accepted by Dwight & Co., but not paid. The $600 draft was presented to Dwight & Co., but not accepted by them. Before any of these acceptances became due, Dwight & Co. failed, as did Cogswell. Upon their being dishonored, and about April 6, 1889, Rhodes & Lynch returned the drafts to Cogswell, saying they were of no use to them. Cogswell remarked that they better keep them, as they were of no use to him, but Rhodes & Lynch went away leaving the drafts in Cogswell's hands. They were in the possession of plaintiff's counsel at the time of the trial. This return of the drafts was made upon the advice of counsel. Rhodes procured the drafts from the Bay City Bank, where he had discounted them, by paying back to the bank the amount of them. It will thus be seen that Cogswell never parted with a dollar towards the payment of these logs, and Rhodes & Lynch never received a dollar for them upon this contract. These drafts were drawn upon estimates of the amount of these logs. It does not appear that they were ever scaled or moved from the skid-ways until the defendant bought them. Rhodes & Lynch testify that they called upon Cogswell to have them scaled, and they made arrangements to furnish cars upon which to load and ship them, but Cogswell refused to receive and pay for them. Cogswell testifies that they did not load the logs on the cars, because he was not yet ready to receive them; it was not convenient for him to take care of them

The two main questions bearing upon the ownership of these logs are: When did the title pass, or, rather, when was it to pass, under the contract? Was it to pass when the logs were placed on the skid-ways upon payment of

the estimates, and was the taking of the drafts by Rhodes such payment?

We do not think that the title to these logs ever passed from Rhodes & Lynch to Cogswell under the contract. Four dollars per thousand was to be paid when the logs were delivered on skids, and another dollar per thousand when put upon the cars. The logs had to be scaled before they were loaded on the cars, and—

" All logs mentioned in contract to be delivered by said second party [Rhodes & Lynch] on cars by the 15th day of March, 1889."

Rhodes & Lynch had the logs on the skid-ways ready to be delivered on the cars according to the contract. Cogswell was not ready to receive them, and refused to do so. Leaving out of question whether or not the drafts were received as payment of the four dollars per thousand, Cogswell was never ready to take the logs and pay the balance upon them. There is nothing in the case or in the contract showing the intention of the parties to be that the title should pass when the logs were delivered on the skid-ways. On the contrary, the plain inference of the agreement is that the delivery which should take the logs out of the possession of Rhodes & Lynch, and put them into the hands of Cogswell,—the delivery transferring the title,—was the delivery on the cars, which might commence on January 10, 1889, and must close on March 15, 1889. When Cogswell refused to permit of this delivery he repudiated the contract, and the title did not pass to him.

This construction of the contract is also shown by the conduct of the parties to be the correct one. The logs mentioned in the contract were cut on section 17, township 17 N., of range 3 E. The mortgage by virtue of which these logs were purported to be sold described the logs pledged therein as—

"About three million feet of pine saw-logs, marked 'A. G.,' '2,' '3,' cut from section 10–16–3 [meaning town 16 north, of range 3 east], now in the mill boom at said Pinconning, and in transit thereto, and lying along the line of the Gladwin Railroad."

The other mortgage, given to McCausland, and claimed to be owned by the Commercial Bank, which bank the plaintiff in this suit represents, described the logs conveyed therein as follows:

"About two million feet of white pine logs, marked 'A. C.,' '2,' '3,' being all the logs cut from section ten, town 19 north, range 3 east, Mich., and now being in transit on the S. B. & N. W. R. R. at Murphy's, and at Pinconning, Mich.; also about eight hundred thousand feet of white pine logs, purchased by first party from Rhodes & Taylor, now in town 14 north, range 4 east, Mich."

It will be seen that the description of logs in both of these mortgages is particular, but does not include the logs in question. The Rhodes & Taylor logs were not the same as the Rhodes & Lynch logs, but logs gotten out under a contract between Cogswell and Rhodes & Taylor. When this suit was commenced, these Rhodes & Taylor logs were claimed by the plaintiff; but, it being conclusively shown that the defendant never had any of them, the claim was withdrawn upon the trial. It is clear that Cogswell never mortgaged, or intended to mortgage, the logs in question.

The court permitted oral testimony to show that these logs were included, or meant to be, in the description of both mortgages, but this was plainly error. The record shows that there were logs cut on section 10-16-3, and taken by the Commercial Bank, and sold under their mortgage. The description was not ambiguous, and needed no explanation, in either mortgage. It was not claimed that any mistake was made in the drafting of the mort-

gages in the references to the sections or townships in which the logs described therein were cut, or that Rhodes & Lynch cut any logs upon any other than section 17-17-3. Mr. Cogswell was permitted to testify that, as to the mortgage to the Commercial Bank, he had only about 1,200,000 feet from section 10-16-3, and that in stating the amount at two or three million feet he made the balance up from the Rhodes & Taylor logs and from the Rhodes & Lynch logs. He also testified that the McCausland mortgage included all these logs. This testimony was incompetent, but it was also not consistent. If the Rhodes & Lynch logs were meant to be included in the McCausland mortgage, why were they not mentioned, as were the Rhodes & Taylor logs? And if the latter logs, as well as the Rhodes & Lynch logs, were meant to be included in the bank mortgage, why were they not mentioned independently of the other logs, as they were in the first mortgage? It will not do, in a description as clear and specific as each of these was, to allow the mortgagor or mortgagee, in a contest with third parties, to come in and swear that the description was intended to cover other property not mentioned in such description. The verdict in this case should have been for the defendant, as the court should have instructed the jury that the title to the logs in dispute never passed to Cogswell.

It is not necessary to inquire whether the drafts taken were intended to be given and received in payment of the $4 per thousand. But one thing is certain,—Rhodes & Lynch obtained no money through them, nor did any one else get any benefit from them. And neither Cogswell nor any one else will lose anything through them under our ruling. If the judgment below was permitted to stand, Rhodes & Lynch would lose about $2,800 by the

drafts, and somebody would get that amount, without paying any value therefor, and without right.

The judgment of the court below is reversed, and a new trial granted, with costs of both courts to defendant.

The other Justices concurred.