AUTOMATIC TIME TABLE ADVERTISING COMPANY *vs.* AUTO-
MATIC TIME TABLE COMPANY.

Middlesex.    December 5, 6, 1910. — March 3, 1911.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Sale,* When title passes. *Practice, Civil,* Exceptions. *Payment. Pleading, Civil,*
Variance.

Under the provision of the sales act, St. 1908, c. 237, § 19, Rule 2, which does not
change the common law, where a manufacturer of machines agrees in writing
to sell twelve specific machines complete, and delivers six of them complete,
retaining in his shop the remaining six in an incomplete condition for the pur-
pose of completing them for delivery, the title to the six machines remaining
in the shop does not pass to the buyer until they are completed, and if before
completion they are damaged by fire the loss falls upon the seller.

Where by the statements in a bill of exceptions it appears that there was a con-
tract to sell upon their completion specific goods which at the time of making
the contract were incomplete, and that before the completion of the goods they
were "greatly damaged" by fire, this does not bring the case within the pro-
vision of the sales act, St. 1908, c. 237, § 8, cl. 2, which applies only where the
specific goods after the contract is made either perish or "so deteriorate in
quality as to be substantially changed in character."

An allegation that a payment was made in cash is supported by proof that it was
made by the setting off of mutual debts.

The payment of certain notes to the holder of them, at the request of a person to
whom a cash payment is due from the person making the payment, is a payment
in cash to the person to whom the cash payment was due.

CONTRACT for the alleged breach of a contract in writing in
failing to deliver to the plaintiff six automatic time table clocks,
operated by electric batteries, in accordance with the terms of
the agreement printed below.    Writ dated August 12, 1909.

The contract declared upon, of which a copy was attached to
the declaration, was as follows :

" Know all men by these presents, that the Automatic Time-
Table Company, a corporation duly organized, having its prin-
cipal place of business at Lowell in the County of Middlesex and
Commonwealth of Massachusetts, in consideration of $4800.00,
paid by the Automatic Time Table Advertising Company, a cor-
poration duly organized, and having its principal place of business
at said Lowell, in said County and Commonwealth, the receipt
whereof is hereby acknowledged, does hereby grant, sell, transfer

and deliver unto the said Automatic Time-Table Advertising Company, the following goods, and chattels, viz., to wit:

"12 automatic time-table machines complete, together with all printed matter, time-tables, electro-plates, printed goods and advertising matter, and advertising contracts, relating to said machines which were sold, assigned and transferred to the said Automatic Time-Table Company by the said Automatic Time-Table Advertising Company under agreement, dated July 13, 1909. Said machines are described and located as follows.

"1 machine located at Merrimack Square, in Lowell, Mass.
1 " " in Lawrence, Mass.
1 " " " Haverhill, Mass.
1 " " " Salem, Mass.
1 " " " Lynn, Mass.
1 " " " Chelsea, Mass.
6 machines now standing in the shop of the Automatic Time-Table Company, 58 Middle Street, Lowell, Massachusetts, and numbered on door on battery side of case, respectively as follows: — 8, 9, 10, 11, 12 and 13.

"The machines above described as located in Merrimack Square, Lowell, Mass., Lawrence, Haverhill, Salem, Lynn and Chelsea, Mass., include all parts and appliances that are now enclosed within or fastened upon their respective cases, and the machines now located in the shop at 58 Middle Street include Gordon batteries and all other essential parts in new and first-class condition that are now used in connection with the above mentioned machines.

"$2400.00 of above consideration is allowed said Automatic Time-Table Advertising Company as a credit by value of demonstration.

"To have and to hold all and singular the said goods and chattels to the said Automatic Time-Table Advertising Company, and its successors and assigns to their own use and behoof forever.

"And the said Automatic Time Table Company hereby covenants with the said Automatic Time Table Advertising Company that it is the lawful owner of the said goods and chattels, and

that they are free from all encumbrances and that it has good right to sell the same as aforesaid, and that it will warrant and defend the same against the lawful claims and demands of all persons.

" In witness whereof the said Automatic Time Table Company has caused its corporate seal to be hereto affixed, and these presents to be signed in its name and behalf by Delmar G. Hurd, its Treasurer, this sixteenth day of July, 1909.

" Automatic Time Table Co.,

" Delmar G. Hurd, Treas."

(Seal)

In the Superior Court the case was tried before *Hardy*, J., without a jury. The defendant was engaged in the manufacture of machines known as automatic time table clocks, which were so constructed as to show the hour of departure of electric cars from the point where the clock was placed to the different destinations of such cars, and also were constructed in such a manner as to afford space wherein business or other advertising could be displayed, and the clocks were intended to be placed in the various street railway stations and other places where people congregated to become passengers on street railway cars. The defendant owned the patents for the manufacture of such machines and no other person could manufacture or sell them. The plaintiff was engaged in the business of securing contracts for the advertising upon such clocks.

The facts shown by the evidence are stated briefly in the opinion. Upon August 8, 1909, an accidental fire greatly damaged the six machines standing in the defendant's premises, and a dispute then arose between the parties as to whether there had been such a sale of these six machines as would vest the title in the plaintiff and subject the plaintiff to the damage thus occasioned to the six machines.

The defendant contended that by reason of the execution of the contract and its delivery to the plaintiff, the property in and title to the machines described in that instrument were conveyed by the defendant to the plaintiff, and that on the day of the fire the title to the machines in question was vested in the plaintiff. The plaintiff contended that the title to the machines remained

in the defendant until the machines were completed and delivered, or were accepted, as provided for by the terms of the agreement of sale.

At the close of all the evidence the defendant asked the judge to rule as follows :

" 1. That proof of all the allegations pleaded in the plaintiff's declaration does not entitle the plaintiff to recover in this action.

" 2. Upon the pleadings and all the evidence in the case the plaintiff is not entitled to recover.

" 3. Upon all the evidence in the case the plaintiff is not entitled to recover."

The judge refused to make any of these rulings, and found for the plaintiff in the sum of $2,471.20. The defendant alleged exceptions.

*N. D. Pratt,* for the defendant.

*J. C. Burke,* for the plaintiff.

LORING, J. The contract of July 16 was a contract for the sale of twelve specific machines and not a contract for the sale of twelve machines of a particular description. By its terms it purports to be a present sale, but it was a sale of " 12 automatic time-table machines complete," and there was evidence that no one of the " 6 machines now standing in the shop of the Automatic Time Table Company " was complete.

The bill of exceptions is somewhat obscure on this point. But as we interpret it there was evidence that apart from the Gordon batteries no one of these six machines was complete. We speak of the parts of the machine other than the Gordon batteries because it seems to have been the undisputed fact that as matter of practice these batteries were not put into the machines until they were set up for use on the premises of the purchaser or licensee, and setting up these machines on the premises of the plaintiff was not part of the obligation of the vendor under the contract here in question. It appeared that that was to be paid for by the vendee in addition to the purchase price named in the written contract.

The contract does not say that the " 12 automatic time-table machines " were complete, but it says that the defendant sells to the plaintiff " 12 automatic time-table machines complete." Evi-

dence that the six here in question were in fact incomplete was admissible as one of the circumstances under which the contract was made and so one of the circumstances in the light of which it was to be construed.

Since something had to be done to the machines to put them in a deliverable state and a different intention did not appear, the property in the six machines here in question did not pass on the execution of the contract. The transaction was governed by the sales act (St. 1908, c. 237), and it is there so provided in § 19, Rule 2. The rule was the same at common law. *Wesoloski* v. *Wysoski*, 186 Mass. 495, and cases cited.

The defendant contends that the cases of *Glover* v. *Austin*, 6 Pick. 209, *Glover* v. *Hunnewell*, 6 Pick. 222, *Sumner* v. *Hamlet*, 12 Pick. 76, *Thorndike* v. *Bath*, 114 Mass. 116, *Mauger* v. *Crosby*, 117 Mass. 330, and *Whittle* v. *Phelps*, 181 Mass. 317, are decisions to the contrary. Those are cases where it appeared that it was the intention of the parties to sell the chattel in its unfinished condition with an agreement by the seller to complete it; or, in the language of St. 1908, c. 237, § 19, those were cases where a different intention did appear.

The contract of July 16, therefore, was not a contract of present sale of six unfinished machines with an agreement on the part of the defendant to complete them, but it was a contract to complete the six unfinished machines which on completion were to become the property of the plaintiff.

The defendant has contended that the delivery of the six machines not in dispute passed the property in the six here in question, and that *Damon* v. *Osborn*, 1 Pick. 476, 481, *Lee* v. *Kilburn*, 3 Gray, 594, 598, and *Rice* v. *Codman*, 1 Allen, 377, are decisions to that effect. Those cases are not decisions to that effect, and the case of *Foster* v. *Ropes*, 111 Mass. 10, is a decision that that contention is wrong at common law. The rule of the common law is the rule under the sales act. The cases relied upon by the defendant do not help him. *Damon* v. *Osborn* was not a sale of specific goods. It was held there that goods bargained and sold would lie before a separation was made. See however *Barrie* v. *Quinby*, 206 Mass. 259. The sale in the case of *Lee* v. *Kilburn* was held to be a sale of specific goods where nothing remained to be done. It was held that as

against a messenger in bankruptcy the title passed without delivery and it was said that: "The taking possession of part was in legal effect, the taking possession of the whole." In *Rice* v. *Codman* the fact that part of the specific goods sold had been taken away was spoken of as showing that the statute of frauds had been satisfied.

The next contention of the defendant is that the fire of August 8 brought this case within St. 1908, c. 237, § 8, cl. 2, and that the plaintiff had to elect between avoiding the whole contract for all twelve machines or paying the whole price for the six the title to which passed to it at the date of the contract. It is not necessary to consider what the result would have been in the case at bar if the case had been brought within St. 1908, c. 237, § 8, cl. 2. The bill of exceptions went no further than to state that the " fire greatly damaged the six machines standing in the defendant's premises," and the statute applies where the specific goods perished after the contract was made or so greatly deteriorated in quality as to be substantially changed in character.

The learned counsel for the defendant misconceives the character of the action now before us when he contends that the plaintiff has not put himself in a position to sue on the footing that the contract is rescinded. This is not an action founded on the rescission of the contract of July 16, but it is an action on that contract to recover damages for the defendant's failure to complete the six machines which at the date of the contract were standing in its shop, and on completion of them to pass the title to the plaintiff.

The defendant's last contention is that there was a variance. The supposed variance consists in this: It is alleged in the declaration that the plaintiff paid the defendant $2,400 in cash. The proof was that: "$1,200 was allowed for capital stock in the defendant company previously issued to the plaintiff company, and paid for at the said price, which stock was then returned to the defendant company; $1,000 was actually paid in assuming and paying a note of the defendant company then outstanding; $151 was also allowed on account of another note also assumed and paid by the plaintiff company; $48 was allowed on account of two advertising contracts the plaintiff company

had outstanding which were assigned to the defendant company; and $1 in money was actually paid when said instrument was signed." With the exception of the two notes assumed and paid by the plaintiff all these were cases of mutual debts set off by agreement and so payments in cash within *Breck* v. *Barney*, 183 Mass. 133. It is stated that the notes were "paid." We interpret that to mean that the plaintiff at the time of the execution of the contract paid those notes, at the defendant's request, to the holder of them. That was a payment in cash.

*Exceptions overruled.*