J. B. BRADFORD PIANO COMPANY, Appellant, vs. HACKER, Respondent.

*January 13—February 1, 1916.*

*Sales: Refusal to accept: When property passes: Recovery of purchase price: Nominal damages for breach: Appeal: Affirmance of judgment.*

1. Defendant, in company with plaintiff's agent, selected a piano at the factory in Chicago, but wished certain alterations in the tone and in the color of the case, which the manufacturer agreed to make. The sale price and shipment to defendant in this state were agreed upon, and a written memorandum of sale was made accordingly. The work necessary to put the piano in deliverable condition took from two to three weeks, and in the meantime defendant repudiated the contract. *Held,* that property in the piano had not passed to defendant, under the Uniform Sales Act (sec. 1684*t*—18, and sub. 2, 5, sec. 1684*t*—19, Stats.), at the time of such repudiation, and hence plaintiff could not recover the purchase price.

2. In an action for the purchase price, in such case, there being no claim for recovery of damages and no evidence offered to show damages resulting from the breach of contract, the most liberal rule of practice would not entitle plaintiff to more than nominal damages; and since under sub. (6), sec. 2918, Stats., upon a judgment for nominal damages defendant and not plaintiff would be entitled to costs, a judgment for defendant should be affirmed.

APPEAL from a judgment of the circuit court for Washington county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

This is an action to recover the purchase price of a Conover inner player piano sold by the plaintiff to the defendant.

The plaintiff is a Wisconsin corporation engaged in the sale of music and musical instruments with its principal place of business in Milwaukee, Wisconsin. Plaintiff's business with the defendant was transacted through H. W. Randall, manager of the player piano department. About two years ago Randall sold the plaintiff a Melville-Clark Apollo player piano. In February, 1914, she returned to the store and expressed a desire to exchange it for a new instrument. A short time after this defendant called again and the price was discussed. Randall offered to take the Melville-Clark player piano and $250 in exchange for the $1,000 Conover inner player piano. Defendant was satisfied with the price provided she liked the new instrument. She felt that the Steck Eolian player piano was her choice, but she consented to go to Chicago with Randall and see the Conover instruments there, where the assortment offered greater opportunity for choice. Randall paid the expenses of the trip, and upon reaching Chicago took defendant to the Cable Company's warerooms and from there to the Cable factory. They met a Mr. Baumann, who was in charge at the factory, and they tried out several instruments. Defendant finally showed a preference for one and agreed to take it provided the case would be stained a certain darker color and the tone made more brilliant, which was agreed to by Randall and the Cable Company. Randall then escorted defendant to the depot, where he suggested that she sign the following order, to which she assented. The material parts of the order are:

| Date of order 4/2/14. | J. B. Bradford Piano Co., Milwaukee, Wis. | |
|---|---|---|
| Salesman H. W. R. | Sold to Miss B. Hacker Hartford, Wis. | |
| | Ship to Miss B. Hacker Town and State Hartford, Wis. | |
| | Ship when . . . | |
| Terms: | Cash delivered | Price. |
| | Conover Inner Player p. c. c. 167237 | $1,000 00 |
| | . . . . . . . . Cr. | |
| | Melville-Clark Piano R. Mahy. | 750 00 |
| | (Signed) . BERTHA HACKER. | $250 00 |

This order was duly sent to the Cable Company, confirming the verbal order as given by Randall while he and *Miss Hacker* were at the factory. On April 7, 1914, the defendant sent a letter to the *Bradford Piano Company* repudiating the contract. The *Bradford Company* on May 2, 1914, made a tender of delivery of the piano as refinished. At the time of the trial the piano was in the warerooms of the *Bradford Company.*

Mr. Randall testified that he thought the work to be done on the instrument could be done in one day. Mr. Baumann, the person in charge of the Cable Company's factory, testified that the process of staining the instrument the shade desired by the defendant took about two or three weeks.

At the conclusion of plaintiff's case before a jury the defendant moved for a nonsuit, which motion was granted. Judgment was entered dismissing plaintiff's complaint and that defendant recover her costs and disbursements of the action. From such judgment this appeal is taken.

The cause was submitted for the appellant on the brief of *H. L. Kellogg,* and for the respondent on that of *Sawyer & Sawyer.*

SIEBECKER, J. The trial court held that the facts and circumstances show as matter of law that the property in the piano was not transferred to *Miss Hacker* at the time the written order for the purchase was given nor prior to the time *Miss Hacker* repudiated this contract on April 7, 1914. The plaintiff assails this holding of the trial court upon the ground that, on the evidence, it was a question for the jury to determine whether or not the parties to the contract intended that the property in the piano was transferred prior to the time defendant repudiated the sale. The evidence shows that defendant and plaintiff's agent negotiated for the sale on April 2, 1914, at the factory of the Cable Company in the city of Chicago, where the defendant selected the piano in question. It appears that she was not satisfied with the

color of the case of the instrument she selected and insisted on having the color altered and made darker.   The manufacturer agreed with plaintiff and defendant to alter the color so as to comply with the understanding of the parties, to regulate the tone of the instrument as defendant desired it, and to insert the player action and test it as is usually done before sending instruments from the factory to customers.   The sale price and the shipment of the instrument by railroad to Hartford, Wisconsin, by the plaintiff were agreed upon by plaintiff's agent and defendant as specified in the written memorandum of sale, set out in the above statement.   The defendant signed this memorandum at the depot in Chicago.   The evidence shows that the piano was returned to the varnishing department of the factory and a color coat of varnish applied to bring the color to the shade desired by the defendant. After this coat had dried two more coats of regular varnish were put on, which when properly dried completed the piano so that it was ready for shipment.   This process took from two to three weeks, when the instrument was boxed and shipped.   Defendant repudiated the contract on the fifth day from the date of sale.   The facts and circumstances show that the piano was not in a deliverable condition at any time up to the date of the repudiation on April 7, 1914.   The contract also required the shipment of the instrument from Chicago to Hartford, Wisconsin, which could not be done, and in fact was not attempted to be done, within two weeks. or more after the sale.   The conduct of the parties at the factory and in negotiating the sale, when taken in connection with the terms of the contract and the circumstances of the case, fails to show that it was mutually understood and intended that the property in the instrument should pass to defendant at this time.   It is plain that the defendant had no control of nor any dominion over the instrument while in the factory and that the Cable Company retained full control and possession to deal with the property as its own.   The evi-

dence, showing the entire transaction, does not permit of the inference that the parties mutually intended that the property passed to defendant under the agreement of sale of the instrument, as contemplated by the provisions of sec. 1684*t*— 18, Stats. 1915. In the light of the provisions of sub. 2, 5, sec. 1684*t*—19, Stats. 1915, it is clear that the property had not passed to defendant when she repudiated the contract. Sub. 2 provides:

"Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them in a deliverable state, the property does not pass until such thing be done."

It is obvious that the piano was not in a deliverable state until the coloring of the case had been altered to comply with the conditions of the sale, within the contemplation of this statute, and hence the property had not passed when defendant repudiated the sale. It is also manifest that the transaction is governed by the provisions of sub. 5 of this statute as regards delivery of the instrument. This section provides that:

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The condition as to shipment expressed in the written memorandum of sale required of plaintiff to ship and deliver the instrument at Hartford, Wisconsin. Taking, then, the conditions and requirements of putting the piano in a deliverable state before such delivery as above indicated and delivery thereof by the seller as specified, it is clear under all the facts and circumstances of the case that the property in the instrument had not passed to defendant at the time she repudiated the contract.

Under the circumstances and conditions of the sale defend-

ant's breach of the contract on April 7, 1914, renders her liable to the plaintiff for the damages it suffered from such breach under the provisions of sec. 1684*t*—64, Stats. 1915, and the decisions of this court.    It was held in *Badger State L. Co. v. G. W. Jones L. Co.* 140 Wis. 73, 121 N. W. 933, that where specific performance cannot be enforced either party may stop performance and subject himself to the payment of compensatory damages.    "In such cases it is held that an action cannot be maintained to recover the contract price, but may be maintained to recover damages for the breach of the contract."    Citing cases in this court.    The complaint is framed for recovery of the purchase price and no evidence was offered to show damages resulting from the breach of contract.    Appellant makes no claim upon the record for recovery of damages.    The most liberal rule of practice authorized under the statutes (ch. 219, Laws 1915: sec. 2836*b*, Stats. 1915) in the light of the record would entitle plaintiff to no more than nominal damages, and requires affirmance of the judgment upon the authority of *Cronemillar v. Duluth-Superior M. Co.* 134 Wis. 248, 114 N. W. 432. On appeal a judgment for defendant will be affirmed if nominal damages do not carry costs but subject plaintiff to costs. Under sub. (6), sec. 2918, Stats. 1915, plaintiff is not entitled to costs on recovery of nominal damages, and costs are allowed to defendant.

*By the Court.*—The judgment appealed from is affirmed.