## Cohen *v.* LaFrance Workshop, Inc., Appellant.

Argued October 10, 1933.

Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*W. Horace Hepburn, Jr.,* for appellant.

*Hirsh W. Stalberg,* and with him *Witkin & Egan,* for appellee.

OPINION BY PARKER, J., March 3, 1934:

The defendant, a manufacturer of lamp shades, placed an order with the plaintiff, a manufacturer of wire frames for lamp shades, for fifty thousand such wire frames. Forty thousand of these were manufactured, delivered and paid for by the defendant. Thereafter, the plaintiff brought this action against the defendant to recover the price agreed to be paid for the remaining portion of the goods covered by the order, alleging that at defendant's request he had manufactured the goods and tendered delivery to the defendant who refused to accept and pay for the same.

The defendant, by its affidavit of defense, admitted the delivery of and payment for the forty thousand frames, and that thereafter a portion only of the remaining frames due under the order had been tendered to the defendant which it refused to accept because the frames were not constructed of tin wire as was required, but of copper wire. The parties hav-

ing submitted their case to a jury and each side having asked for binding instructions, the court submitted these questions only for the determination of the jury: "If you believe that these ten thousand lamp shade frames were manufactured at the request of the defendant for him, by the plaintiff, and if you further believe that they were made out of tin wire, then your verdict should be in favor of the plaintiff in the amount of four hundred and ninety dollars, together with interest. If, on the other hand, you find that they were made out of copper wire, then your verdict will be in favor of the defendant in no sum of money." The jury found for the plaintiff for the price agreed upon with interest. The lower court refused defendant's motions for judgment n. o. v. and for a new trial, and defendant appealed, assigning as error the refusal of those motions. Even though the plaintiff was entitled to go to the jury, the lower court erred in limiting the questions of fact involved as was done by the charge. However, an examination of the Sales Act shows that the defendant's motion for binding instructions should have been granted.

This action, as shown by the pleadings and proofs, is for the purchase price agreed upon and not for damages sustained by reason of breach of contract by the vendee. Considering Section 63 of the Sales Act, the first and pertinent inquiry is whether the ownership and title to the goods had passed. In our opinion, the contract was executory. In other words, it was not a purchase of existing specific property, but an agreement to purchase unascertained and non-existent goods to be thereafter produced. The order for the goods was by a catalogue number of which the following is a typical example: "1,000 31-10 Frames at .06 $60." The plaintiff testified that he manufactured the goods after the order was placed. "An

agreement to sell future goods is executory and does not pass the title, although couched in the present tense'': Frank Pure Food Co. v. Dodson, 281 Pa. 125, 128, 126 A. 243; Strong, Deemer & Co. v. Dinniny, 175 Pa. 586, 34 A. 919; Winslow v. Leonard, 24 Pa. 14. In cases where personal property of a certain description is purchased but not identified or selected from a mass of the property of the vendor, the contract is executory and incomplete and the title to it remains in the vendor: Conard v. P. R. R. Co., 214 Pa. 98, 102, 63 A. 424. See Secs. 17, 18 and 19 of the Sales Act.

The property in the goods not having passed to the buyer, Paragraph (1) of Section 63 of the Sales Act is eliminated from consideration, and if the plaintiff is entitled to maintain this action it must be by virtue of the later paragraphs of that section. Paragraph (2) provides as follows: ''Where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price, although the property in the goods has not passed, and the goods have not been appropriated to the contract.'' Nothing was said in the order as to the terms of payment. Consequently, we assume that the price was payable upon the delivery of the goods. In other words, under the contract of sale the price was not payable ''on a day certain'' irrespective of delivery, but the time of payment was dependent upon the time of delivery.

The third paragraph of Section 63 of the Sales Act is as follows: ''Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section sixty-four (four) are not applicable, the seller may

offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's, and may maintain an action for the price.''

The appellant contends very earnestly that the trial court should have said as a matter of law that the lamp shade wires could readily be resold for a reasonable price. There was not any direct evidence on this subject. We are dependent alone upon the fact that the purchase was made of an article described by a catalogue number. Under such circumstances we cannot say as a matter of law that the goods could or could not be readily sold for a reasonable price. These are not articles the nature and use of which are matters of common knowledge, or where it is a matter of common knowledge that such articles have a ready sale for a reasonable price, such as sauerkraut (Frank Pure Food Co. v. Dodson, supra), or bulk lumber (Weintrob's Estate, 295 Pa. 374, 145 A. 425). Neither does it appear that these goods, although manufactured, were only useful to the buyer, such as a suit of clothes, structural steel cut to special sizes, etc. It did not, however, affirmatively appear that the goods did not have a ready sale for a reasonable price.

There is a more serious difficulty. There is neither an averment in the pleadings nor any proof that the seller notified the buyer ''that the goods are [were] thereafter held by the seller as bailee for the buyer.'' Such being the case the seller has failed to bring himself within the provisions of this section of the Sales Act and his remedy, if any, is by an action for damages for nonacceptance. We cannot regard this provision as anything else than mandatory. It was the apparent purpose of the legislature to require the

seller to take a definite position in this respect before starting suit by declaring himself bailee for the buyer. See Western Hat, etc., Co. v. Berkner, (1927) 172 Minn. 4, 214 N. W. 475; Mosler Safe Co. v. Brenner, (1917) 100 Misc. 107, 165 N. Y. S. 336; Mindlin v. Freydberg, (1918) 171 N. Y. S. 250; Crown Elec. Co. v. Chiariello, (1919) 175 N. Y. S. 167; Henderson Importing Co. v. Breidbart, (1920) 182 N. Y. S. 169; Robison v. Kram, (1921) 195 App. Div. 873, 187 N. Y. S. 628. The failure of the plaintiff to offer proof of such notice was fatal to his case. "It is essential to bring a case within the rule that the goods cannot be readily resold, and that the seller has notified the buyer that the goods are held as a bailment for him": 2 Williston on Sales (2nd ed.) §560c. Also, see Uniform Laws Ann.—Sales, Vol. 1, p. 332; P. E. & M. Co. v. J.-H. Coal Co., 93 Pa. Superior Ct. 217.

The judgment is reversed and entered for the defendant.