541 A.2d 775

**W.I. SNYDER CORP., Appellee,**

v.

**Charles CARACCIOLO, d/b/a Charles Caracciolo Steel and Metal Yard, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1988.

Filed May 2, 1988.

488

Michael J. Betts, Pittsburgh, for appellant.

Thomas E. Lippard, Pittsburgh, for appellee.

Before BROSKY, WIEAND and DEL SOLE, JJ.

DEL SOLE, Judge:

Presented for our consideration in this appeal is a question of whether an oral contract is enforceable under an exception to the Statute of Frauds, 13 Pa.C.S. § 2201. Since we conclude the contract is enforceable because partial payment was made and accepted for the goods, we must also examine Appellant's contention that Appellee should

not have been entitled to recover the price of the goods which were the subject of the contract. Appellant alleges that Appellee failed to establish that it had made a reasonable effort to resell the goods as required under 13 Pa.C.S. § 2709. Finding this second claim to also be meritless, we affirm the Judgment entered by the trial court.

A brief review of the factual background of this case is necessary to a discussion of Appellant's claims. The facts relayed at trial, when read in a light most favorable to Appellee as the verdict winner, establish the following. Appellee, W.I. Snyder Corp., was in the business of purchasing high grade metals to sort and prepare for later resale to local steel mills. For approximately three to four years prior to the time the parties entered into the subject contract they engaged in business dealings. During this period of time, Appellant would generally telephone William Snyder about scrap metal Appellant had for sale. In a January, 1984 phone conversation Appellant mentioned to William Snyder that he was looking for some equipment. Mr. Snyder indicated that he had recently purchased a nearby facility, had removed all the equipment he needed and was willing to sell all the equipment remaining at the facility, which included cranes, bulldozers and bobcats as well as hundreds of small tools and parts, as a package for $120,000.00. Appellant responded that he was interested in such a deal and inquired whether Mr. Snyder would take a few loads of scrap as payment. Appellant also relayed that he could ship at least "two or three loads ... right away as a downpayment." N.T. 5/12/86 at 24. It was decided that Mr. Snyder would make a trip to Appellant's plant to see the scrap which Appellant wished to use as a downpayment.

At Appellant's plant Mr. Snyder was met by Appellant and his son Charles Caracciolo, Jr. Mr. Snyder was shown the scrap and he stated that it was acceptable to him. The parties then discussed arrangements for enabling Appellant's son to inspect the equipment. It was agreed that Appellant's son would travel to Appellee's plant with a load of scrap to be used as the first downpayment for the

equipment. This load was to consist of material which Mr. Snyder had purchased from Appellant in the past. Two subsequent loads of material, a type which Mr. Snyder had never before purchased, were also to be sent at a later time as partial payment.

As arranged, Appellant's son and a truck driver traveled to Appellant's plant and brought with them a load of stainless steel. A Bill of Lading was stamped and signed as received and a receiving memorandum which detailed the weight and price of the shipment, $10,409.59, was sent to Appellant. Upon his arrival, Appellant's son was escorted to the plant where the equipment was housed. He remained there for less than an hour before he returned to Mr. Snyder's office and informed him that he liked what he saw and he would call Mr. Snyder shortly. The next day Appellant's son telephoned Mr. Snyder asking if he could have his experts look at the equipment. Mr. Snyder responded that this would be fine with him and three or four days later Appellant's son returned to Appellee's plant along with two other individuals. The men examined the equipment for approximately three hours but did not start any of the engines. Appellant's son then returned to Mr. Snyder's office and informed him that once he spoke to his father they would probably go through with the deal. Mr. Snyder and Appellant's son again discussed the payment plan which included two loads of material never before purchased by Appellee which was to serve as a down payment.

Two loads were subsequently shipped to Appellee on February 21 and March 1, 1984. The materials contained in this shipment were of a type which Appellee had never before purchased from Appellant. A receiving memorandum was sent to Appellant which listed the total price of the two shipments as $10,211.72. Shortly thereafter, on March 7, Mr. Snyder received a call from Appellant who expressed satisfaction with the equipment and stated that they would go ahead with its purchase. Two days later Appellant again called Mr. Snyder and stated that he would

pick up the equipment on Monday and that he would bring trucks and mechanics to facilitate this. Mr. Snyder expressed a desire to have the terms of their agreement detailed in a written contract, but Appellant stated that he believed such a writing was unnecessary since Appellee already had three truckloads on account. Appellant and Appellee further agreed that Appellant would ship Appellee scrap for the remainder of the year and if the loads did not meet the $120,000.00 contract price for the equipment Appellant would settle the account at that time.

On Monday, March 12, 1984 Appellant's son arrived at the warehouse with trucks and men and was admitted by Appellee's employee. Approximately five hours later Appellant's son went to Mr. Snyder's office and announced: "You better send somebody over there to lock up, you know, the place is wide open. We are not taking anything. We pulled out. We are not taking any of the equipment." N.T. 5/12/86 at 60. Appellant's son also refused to take with him a written contract which Mr. Snyder's attorney had drafted.

Appellant first argues that "the oral contract alleged by Snyder is unenforceable under the Statute of Frauds." The Statute of Frauds requires that a contract for the sale of goods priced at $500 or more must be in writing and be signed. 13 Pa.C.S.A. § 2201(a). There are, however, statutory exceptions to this requirement. At trial the jury was charged in accordance with the following exceptions to the formal requirements of the statute of frauds:

> A contract which does not satisfy the requirements of the subsection (a) [requiring a contract for the sale of goods for a price of $500 or more to be in writing and signed] but which is valid in other respects is enforceable:
>> (3) with respect to goods for which payment has been made and accepted or which have been received and accepted.

13 Pa.C.S.A. § 2201(c)(3).

In the instant case, the jury was also instructed that the alleged contract was indivisible and, therefore, if the jury

should find that part payment on the account was made by the buyer and accepted by the seller, the entire contract would be valid and enforceable. The jury found the contract to be enforceable and it is this finding which Appellant disputes.

Appellant provides this court with three reasons why an exception to the Statute of Frauds cannot apply in this case for goods for which payment was made and accepted.

First Appellant asserts that Appellee "expressly admitted in paragraph 5 of its Reply to New Matter that Appellant did not make payment for the goods." Appellee was permitted by the court to amend this pleading to provide that partial payment in the form of the delivered scrap metal valued at $20,621.31, was accepted by Appellee. Both the original paragraph and the amendment were read to the jury. The trial court provided the following rationale for permitting the amendment:

> In the present case, the allowance of the amendment caused no prejudice to Defendant. Plaintiff wanted to amend their Reply to New Matter because counsel constructed the word "payment" to mean *money* paid. Because Defendant never paid any money to Plaintiff, Plaintiff admitted that there was never any "payment" made. Moreover, counsel for Defendant, at trial, admitted that there was no prejudice.

(citation and footnote omitted.)

It is important to note that a decision to permit an amendment to a pleading is a matter committed to the discretion of the trial court. *General Machine Corp v. Feldman*, 352 Pa.Super. 180, 185, 507 A.2d 831, 834 (1986). The right to amend is generally liberally granted unless the adverse party would be prejudiced or an error of law would result. *Sands v. Forrest*, 290 Pa.Super. 48, 434 A.2d 122, 124 (1981). The type of prejudice that would prevent the grant of an amendment must be greater than a mere detriment to the other party "since any amendment almost certainly will be designed to strengthen the legal position of the amending party and correspondingly to weaken the

position of the adverse party". *Id.*, 290 Pa.Superior Ct. at 53, 434 A.2d at 125, quoting, *Cellutron Products Corp. v. Stewart,* 223 Pa.Super. 391, 394, 300 A.2d 900, 901–902 (1972).

■ Based upon the trial court's conclusion that no prejudice resulted from the amendment, the fact that both the original and the amended pleadings were read to the jury, and the Appellee's justification for seeking an amendment, we find the trial court did not abuse its discretion by permitting the amendment. Accordingly, we must reject Appellant's claim that the partial payment exception was inapplicable due to an admission contained in Appellee's pleading.

■ The second argument advanced by Appellant must likewise be rejected. Appellant posits that the "payment" requirement of the exception found in 13 Pa.C.S.A. 2201(c)(3) was not met in this case since the facts established only an existing debt relationship between the parties, and a mere agreement to apply an existing debt in payment cannot constitute payment. *H. Feldman's Sons Co. v. Netsky,* 348 Pa. 237, 240, 35 A.2d 305, 307 (1944).

In the instant case there was evidence presented from which the jury could determine that payment was made. The jury heard testimony regarding the delivery and acceptance of three separate shipments of scrap which was alleged to have been received as a down payment or partial payment for the purchase of the equipment package. It was for the jury to determine whether one or all of these shipments constituted a payment or whether there was merely an existing debt relationship between the parties which Appellee sought to apply as a payment. We will not usurp the fact-finding function of the jury since there is evidence to support their verdict in this regard. *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973).

Appellant also provides this court with a third reason for concluding that the partial payment exception is inapplicable in this case. Appellant relies upon the Court of Com-

mon Pleas decision in *Williamson v. Martz*, 11 D. & C.2d 33 (1956), which held that partial payment cannot take an indivisible contract out of the Statute of Frauds. Appellant urges this court to make a similar ruling, which we decline to do.

The Uniform Commercial Code does not answer the question at hand; what is the effect of partial payment on an indivisible contract. It is clear under the Code that partial payment will render the contract enforceable with respect to the goods for which payment has been made. "Receipt and acceptance ... of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment ... the seller can be forced to deliver an apportionable part of the goods." Uniform Commercial Code, Comment 2. to Section 2–201. However with respect to an indivisible contract the court in *Williamson v. Martz, supra,* ruled: "The Code ... den[ies] the enforcement of the contract where in the case of a single object the payment made is less than the full amount." *Id.* at 35.

This Pennsylvania case was the first to deal with this problem under the Uniform Commercial Code. Beane, *The Partial Payment Exception to the UCC Sale of Goods Statute of Frauds*, 13 UCC L.J. 135 (1980). Since its decision the courts of many other jurisdictions have passed on the question at hand, nevertheless, the appellate courts of this Commonwealth have not considered the effect of partial payment on an indivisible contract. However, the courts of other jurisdictions which have examined the issue, and commentators in the field, have often criticized the decision reached in *Williamson v. Martz. See:* Beane, *Partial Payment Exception to UCC Sale of Goods Statute of Frauds, supra,* and 97 ALR3d 908, (which collect cases); Murray, *Murray on Contracts*, 687–689 (Revised ed. 1974); White & Summers, *Uniform Commercial Code*, 68 (2d ed. 1980). We conclude it is appropriate for Pennsylvania to follow the weight of authority in this area and rule that part payment of an indivisible contract takes the entire

contract outside of the requirements of the Statute of Frauds.

■ Prior to the enactment of the Code, "under the repealed Uniform Sales Act, the *entire* 'contract' was made enforceable on receipt of only *part*, or payment of *any part* of the price." Pennsylvania Bar Association Notes following 13 Pa.C.S.A. 2201. Such a rule enabled the parties to establish the existence of a deal by providing the court with evidence of a down payment. The details of the deal could later be developed in court from the testimony of the parties. Beane, *Partial Payment Exception to UCC Sale of Goods Statute of Frauds, supra,* at 143. We believe the same logic should apply in the case where an partial payment is made on an indivisible oral contract. To read the Code as requiring otherwise would be "unduly restrictive". Murray, *Murray on Contracts, supra,* at 687. Part payment is a sufficiently reliable indicator that a contract does in fact exist. The quantity of goods in such an agreement would not be the matter of dispute in an indivisible contract. *See:* 97 ALR3d 908 at 915. Accordingly, we find no need to depart from the established authority in this area. We hold that partial payment of an indivisible oral contract enables the contract to be enforced despite the provisions of the Statute of Frauds.

Since we find support for the jury's verdict which established that an enforceable contract was created, we must also review Appellant's claim that the damage award was inappropriate. It is Appellant's position that Appellee failed to satisfy the requirements of 13 Pa.C.S.A. § 2709. The relevant portion of the statute provides:

When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages the price of ...

. . . . .

(2) goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable

price or the circumstances reasonably indicate that such effort will be unavailing.

13 Pa.C.S.A. § 2709(a)(2).

 A determination of whether the seller made a reasonable effort to resell the goods at a reasonable price or whether the circumstances reasonably indicate that such an effort would be fruitless is a matter properly left for the jury to decide. *See: Cohen v. La France Workshop,* 112 Pa.Super. 309, 171 A. 90 (1934). It is the jury's responsibility to evaluate the evidence and determine facts. *Riddle Memorial Hosp. v. Dohan,* 504 Pa. 571, 578, 475 A.2d 1314 (1984). It is not the function of this court to determine whether we would reach an opposite conclusion from the evidence or whether some other jury might reach a different conclusion. *Mapp v. Wombucker,* 421 Pa. 383, 385, 219 A.2d 681 (1966). So long as sufficient evidence has been offered to establish that reasonable persons may differ as to the verdict, this court will not superimpose our own beliefs for that of the jury. *Riddle Memorial Hosp. v. Dohan, supra.*

 The evidence adduced at trial was sufficient to support the jury's finding. Mr. Snyder testified that his attorney, Mr. Lippard handled the attempted resale. When questioned Mr. Lippard indicated:

Well, I specifically contacted a number of people who are in the business of liquidating industrial equipment, auctioneers, and then a series of letters which I wrote specifically to such people; among those was a fellow Dan Park whom I knew personally, whose family business is Park Corporation which is a major liquidator of plant equipment.

N.T. at 134–135.

Only two individuals responded to these letters and Mr. Lippard referred them to Mr. Snyder. Although these individuals came to the plant and examined the equipment no deal was consummated. As Mr. Snyder recounted:

Yes, we explained to them everything about the equipment, but these people were not willing to guarantee us one penny. All they wanted was to be guaranteed a fee to hold a sale and, you know, we would have to guarantee them amounts of dollars to go ahead and sell the equipment, and the equipment could bring nothing or it could bring hundreds. It could bring one hundred or two hundred thousand with zero guarantees. They couldn't guarantee anything. They wanted to be guaranteed the amount of money to hold the sale.

N.T. at 64.

We find there was sufficient evidence from which the jury could conclude that Appellee was unable to resell the goods at a reasonable price after making a reasonable effort to do so.

Order affirmed.