# Dibble v. Penn State Geisinger Clinic Inc.

C.P. of Lackawanna County, no. 98 CV 2281.

*Kevin P. Foley,* for plaintiffs.
*John Q. Durkin,* for defendant clinic.
*Kenwyn M. Dougherty,* for defendant plan.

MINORA, *J.,* June 27, 1999—The current action sounds in medical malpractice and is before this court by way of numerous preliminary objections filed by defendants Penn State Geisinger Clinic Inc. and Penn State Geisinger Health Plan (formerly Geisinger Health Plan). The parties have briefed their respective positions and this matter is now ripe for decision.

## FACTS

Charles Dibble and his wife, Rhoda Dibble, have commenced this action against various health care and insurance entities and physicians. Instantly, plaintiffs allege that on January 21, 1994, Charles Dibble was admitted to the defendant Geisinger Wyoming Valley Medical Center with a myocardial infarction. At that time, Dibble was a private subscriber of the plan under its insurance contract. Subsequently, Dibble was transferred to the Geisinger Hospital in Danville at which time an agent, employee and/or servant of the defendants determined Charles had an enlarged prostate and ordered a Prostate Specific Antigen test. Plaintiffs allege that Charles' PSA test came back with an elevated level. Plaintiffs further aver that the physicians named in the caption above as

defendants, all of whom were in some way affiliated with the clinic, neglected to appreciate the serious nature of the test results.

Plaintiffs allege that each of the defendants were aware of the elevated PSA and thus, were aware of the fact that Charles suffered from prostate cancer or at a minimum should have performed further testing for purposes of confirming said diagnosis, but failed to do so. Specifically, plaintiffs' complaint alleges that the defendants had either constructive or actual knowledge of the elevated PSA as well as the fact that Charles suffered from prostate cancer in January of 1994, but failed to render any treatment or do anything for a period of two and a half years. The delayed diagnosis and treatment is claimed to be a result of negligence. Plaintiffs claim, that due to the two and a half year delay, a more extensive amount of damage occurred than if an earlier detection were made and treatment started.

Presently, this court is confronted with two of the 11 named defendants' preliminary objections. The two defendants presently filing the preliminary objections are: (1) clinic; and (2) plan. In order to provide a clear and concise opinion, this court will address the two above named defendants' preliminary objections separately.

## DISCUSSION

### *Preliminary Objections Sounding in Demurrers*

In considering a demurrer, all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom are admitted as true. The court cannot accept as true conclusions of law. The question presented by the demurrer is whether, on the facts averred,

the law holds with certainty that no recovery is possible. A demurrer should be sustained only in cases where the plaintiff has clearly failed to state a claim on which any relief may be granted. A demurrer should not be sustained if any doubt exists as to whether the complaint adequately states a claim for relief under any theory. *Pittsburgh National Bank v. Perr,* 431 Pa. Super. 580, 584, 637 A.2d 334, 336 (1994). Since the sustaining of a demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without doubt fail to state a claim for which relief may be granted. *Shick v. Shirey,* 552 Pa. 590, ___, 716 A.2d 1231, 1233 (1998), citing *County of Allegheny v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 407 (1985).

"A demurrer will not be sustained unless the face of the complaint shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer." *Giffin v. Chronister,* 151 Pa. Commw. 286, 290, 616 A.2d 1070, 1073 (1992). "[I]n pleading its case, the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense." *PennDOT v. Bethlehem Steel Corp.,* 33 Pa. Commw. 1, 11, 380 A.2d 1308, 1313 (1977). A preliminary objection in the nature of a demurrer cannot be used to raise substantive defenses against a plaintiff's right to recover. Goodrich-Amram 2d, vol. 2 §1017(b):25 (1991).

"A preliminary objection in the nature of a demurrer may only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief." *McCaskill v. Philadelphia Housing Authority,* 419 Pa. Super. 313, 316, 615 A.2d 382, 383 (1992).

With these standards in mind we will examine the clinic and plan's preliminary objections.

The clinic's preliminary objections concern the following four points: (1) plaintiffs' complaint fails to state a claim for punitive damages; (2) a claim for corporate negligence or corporate liability cannot be maintained against a medical clinic or group of medical practitioners; (3) plaintiffs' complaint fails to state a claim for negligent infliction of emotional distress; and (4) in the alternative, plaintiffs' complaint fails to specifically state the various detailed areas of negligence as against the individual defendants and as such, it requires at least an amendment.

## I

Initially, we will address the clinic's preliminary objections to the plaintiffs' claims for punitive damages. In order to resolve the issue concerning punitive damages, this court is mindful that under Pennsylvania law, punitive damages may be recovered only if a tort-feasor's actions were outrageous, wanton, willful, oppressive or so careless as to exhibit a reckless indifference to the rights of others. *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, ___, 713 A.2d 1127, 1129 (1998). Pennsylvania has adopted the punitive damages standard enunciated in section 908 of the Restatement (Second) of Torts. *Chambers v. Montgomery,* 411 Pa. 339, 344, 192 A.2d 355, 358 (1963). The pertinent part of that section states:

"Punitive damages are damages awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future. Punitive damages may be awarded for conduct that is evil motive or reckless indifference to the

rights of others. In assessing punitive damages, the trier of fact can properly pursue the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendants." Restatement (Second) of Torts §908.

Hence, conduct that exhibits a reckless indifference to another's interest may warrant the imposition of punitive damages. See also, *Rhoads v. Heberling,* 306 Pa. Super. 35, 46-47, 451 A.2d 1378, 1384 (1982).

Clinic has also objected to the punitive damages claim contained in Count XIV of the plaintiffs' complaint seeking loss of consortium on behalf of plaintiff Rhoda Dibble. In her claim, Rhoda incorporates the forgoing paragraphs of the complaint at issue and alleges she suffered damages "[a]s a direct and proximate result of the defendants' conduct as stated in the preceding paragraphs."

We would like to note that plaintiff Rhoda Dibble's consortium action is derivative and dependent upon her spouse's action. Therefore, her claims for punitive damages will be allowed to the extent punitive damages are allowed for Charles Dibble by the holdings of this court contained in this memorandum.

To begin, we will address the clinic's preliminary objections concerning the claim for punitive damages. We hold that the allegations of the plaintiffs' complaint alleging that defendants' failure to advise Charles of the fact that he suffered from prostate cancer in January of 1994 and/or recommend further follow-up testing to confirm the diagnosis may, if proven, support a cause of action for punitive damages. This alleged failure to warn Charles of his condition, if proven, can be construed as

an illustration of the clinic's "reckless indifference" to Dibble's rights as a patient. Therefore, this court holds that the clinic's preliminary objections to plaintiffs' claims for punitive damages must be denied, because we find that the allegations enumerated in the plaintiffs' complaint, on their face, could be construed by a finder of fact to support the possibility of recovery for said claim.

## II

The second issue raised in the clinic's preliminary objections is whether a claim for corporate negligence can be maintained against them. The crux of clinic's argument is that a claim for corporate negligence is strictly limited to hospitals and does not extend to individuals or group medical practices such as the clinic. Therefore, the claim should be dismissed against the clinic because they do not fit within the narrow parameters of liability based on corporate negligence.

"Corporate negligence is a doctrine under which [a defendant] is liable if it fails to uphold the proper standard of care [it owes] the patient . . . This theory of liability creates a nondelegable duty which the [defendant] owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party." *Thompson v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). (footnote omitted) The *Thompson* court then set forth four general areas of corporate liability:

"(1) A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment . . . ;

"(2) A duty to select and retain only competent physicians . . . ;

"(3) A duty to oversee all persons who practice medicine within its walls as to patient care . . . ;

"(4) A duty to formulate, adopt and enforce adequate rules and policies to [enforce] quality care for patients." *Id.* at 339-40, 591 A.2d at 707. (citations omitted)

Additionally, the *Thompson* court stated that "we adopt as a theory of hospital liability the doctrine of corporate negligence or corporate liability under which the hospital is liable if it fails to uphold the proper standard of care owed its patient." *Id.* at 341, 591 A.2d at 708.

Until recently, hospitals were the only medical providers recognized to be subject to such a claim. Last year the Pennsylvania Superior Court extended liability under corporate negligence to include health maintenance organizations. *Shannon v. McNulty*, 718 A.2d 828, 830 (Pa. Super. 1998). The clinic, however, is not a hospital or an HMO but it is described in plaintiffs' complaint as "a regional system of primary care facilities . . . which offered for sale and sold medical services and devices. . . ." Plaintiffs' complaint, paragraph 4.

In order to decide whether the doctrine of corporate negligence should be extended to an entity such as the clinic, it is instructive to review the reasons for its application to hospitals and HMOs. Corporate negligence was applied to corporate hospitals "in full recognition of [their] role in the total health care of [their] patients." *Thompson, supra* at 341, 591 A.2d at 708. The *Thompson* court stated that "[t]he corporate hospital of today has assumed the role of comprehensive health center with responsibility for arranging and coordinating the total health care of its patients." *Id.* at 338, 591 A.2d at 706. (footnote omitted) Therefore, the *Thompson* court held that for a hospital to be independently liable for negli-

gence it must be shown that the hospital had actual or constructive knowledge of the defects which caused the harm, and the hospital's own negligence must have been a substantial factor in causing the harm. *Id.* at 341, 591 A.2d at 708.

In extending the doctrine to HMOs, the Pennsylvania Superior Court stated:

"[HMOs play a] central role . . . in the total health care of its subscribers. A great deal of today's health care is channeled through HMOs with the subscribers being given little or no say so in the stewardship of their care. Specifically, while these providers do not practice medicine, they do involve themselves daily in decisions affecting their subscribers' medical care." *Shannon, supra* at 835.

Therefore, the Superior Court extended the doctrine of corporate negligence to HMOs because HMOs control their subscribers' care and interject themselves "into the rendering of medical decisions affecting a subscriber's care." *Id.* at 836.

Here, it appears that the clinic, like a hospital and an HMO, is a critical component of the comprehensive health care delivery system to the patient. Further, it is generally the first interface that a patient has in entering into the health care delivery system. Despite this role, a clinic cannot be considered a comprehensive health care center such as a hospital, nor can it be construed to play a central role in the "total health care of its subscribers." *Shannon, supra.* In fact, this type of facility is referred to as a primary care facility. As such it is only a gateway for further referrals into the health care delivery system where appropriate. Because a clinic is not a comprehensive medical care facility, but instead is a primary care

facility this court believes *Thompson, supra,* does not apply.

A clinic, while it plays a critical primary role, albeit limited, in providing health care it cannot be considered to be a *central* role . . . in the *total* health care of its subscribers. Therefore, *Shannon, supra,* is not applicable to a clinic. Oftentimes, both the primary care facility and primary care doctor are told how a patient can be treated within the limits of the subscriber's HMO plan. Therefore, based upon our findings, we hold that the clinic's preliminary objection to Count I of plaintiffs' complaint alleging a cause of action under a theory of corporate negligence is granted.

## III

The clinic's third preliminary objection pertains to Count XIV of plaintiffs' complaint, which contains a claim for emotional distress. Upon a thorough review of plaintiffs' brief in response to the clinic's preliminary objections, this court is unable to locate any reply by the plaintiffs to said objection. Due to plaintiffs' failure to respond to this objection, this court in making its determination on how to resolve this issue seeks guidance from the Lackawanna County Rules of Civil Procedure. Specifically, we cite to Rule 1028, disposition of preliminary objections and motions for judgment, which states in pertinent part as follows:

"(c) All parties who wish to contest the preliminary objections or the motion shall within 30 days from the filing of such preliminary objections or motion file a reply memorandum of law and a certificate that such has been served upon the moving party. . . .

"(h) Timely filing of memoranda of law is essential to the proper functioning of this rule. Therefore, if a moving party fails to file a memorandum of law within the time provided in subsection (b) above, the preliminary objections or motion shall be dismissed. *If an opposing party fails to file a memorandum of law within the time provided in subsection (c) above, that party shall be deemed not to contest the matters raised in the preliminary objections or motion and the court shall proceed to disposition on that basis.*" Lacka. Co. R.C.P. 1028. (emphasis added)

The clinic's preliminary objection concerning plaintiffs' claim for emotional distress is granted due to plaintiffs' failure to brief this issue. Therefore, this count is stricken from the complaint.

## IV

The clinic's final preliminary objection requests that the plaintiffs be ordered to file a more specific complaint with regard to those paragraphs and counts of the complaint delineating the various theories of negligence against the separate defendants. The complaint alleges negligence against "defendant doctors" without identifying the specific doctor for which each of these assertions is applicable. The specific counts of the complaint which make the general allegations against the doctors are as follows: Count I, paragraph 109, subparagraphs (a), (b), (i), (bb) and (hh); Count II, paragraph 112, subparagraphs (a), (b), (j), (k), (l) and (q); Count IX, paragraph 137, subparagraphs (a), (b), (i) and (cc); and Count X, paragraph 139, subparagraphs (a), (b), (i) and (bb). The clinic also asserts that the plaintiffs' complaint sets forth numerous allegations of essentially identical theo-

ries of negligence against each and every defendant. Due to the length of time that has transpired over the alleged negligent conduct, the clinic avers that it is almost impossible to conclude that each and every theory of negligence against all the defendants are identical. Therefore, the clinic requests that the plaintiffs be ordered to file a more specific complaint.

In response to the above objection, the plaintiffs contend that if any question exists as to the sufficiency of the factual allegations, this court should liberally grant leave to amend the complaint. This remedy appears a suitable response to the preliminary objections at issue and thus, this court is striking the objectionable language delineating the various theories of negligence against the separate defendants. However, the plaintiffs are granted 20 days to amend the following counts of their complaint: Count I, paragraph 109, subparagraphs (a), (b), (i), (bb) and (hh); Count II, paragraph 112, subparagraphs (a), (b), (j), (k), (l) and (q); Count IX, paragraph 137, subparagraphs (a), (b), (i) and (cc); and Count X, paragraph 139, subparagraphs (a), (b), (i) and (bb) or in the alternative to proceed without the stricken language.

Despite the fact that the clinic makes no objection to the plaintiffs' fiduciary duty claims, the plaintiffs' brief in response to defendant clinic's preliminary objections contains an allegation that the clinic breached their fiduciary duty of full disclosure to their patient, Dibble. However, as noted above, the clinic raised only four issues in their preliminary objections, none of which concerned a breach of fiduciary duty. Conversely, plan's preliminary objections challenge the claims arising out of an alleged breach of fiduciary duty.

## V

We shall now address the preliminary objections raised by plan to the plaintiffs' complaint.

Preliminarily, the plan has filed preliminary objections to Counts II, III, IV, V and XIV of the plaintiffs' complaint demanding punitive damages. The gravamen of the plaintiffs' allegations for punitive damages is that they allege that the plan had employed the defendant doctors in this action with knowledge and notice or reason to know of the doctors' lack of sufficient qualification, capacity or experience. Plaintiffs also allege that the plan held out the defendant doctors to the plaintiff as being competent, knowledgeable and experienced physicians capable of properly handling Charles' medical conditions. Further, the plan is alleged to have been providing and promulgating policies and procedures detrimental to the treatment of Dibble.

The plaintiffs' complaint also alleges that the plan failed to provide qualified, competent and/or experienced medical personnel, failed to adequately supervise the same and promulgated treatment practices and policies that are recklessly indifferent and detrimental to Dibble's treatment. Specifically, the plaintiffs' complaint alleges "gross, wanton, reckless, careless and negligent" conduct on the part of plan. For the most part, this court finds that the aforementioned allegations are sufficient to support a cause of action for punitive damages; however, there are some areas in which they do not.

Therefore, the plan's preliminary objections to plaintiffs' claims for punitive damages are granted in part and denied in part and shall be discussed in full in this writing as we address each count of the plaintiffs' complaint objected to by the plan.

The plan objected to paragraph 104 and subparagraphs 112(u), 122(c) and 122(d) for legal insufficiency. Paragraph 104 of the plaintiffs' complaint alleges that the plan owed plaintiff a fiduciary duty "arising out of its physician/patient/health care provider relations and/or contractual relationship." Paragraph 112 alleges "gross, wanton, reckless, careless and negligent conduct and improper treatment on the part of defendant plan." Specifically, subparagraph 112(u), objected to by plan, avers that the plan committed a "breach of its fiduciary obligations to the plaintiff, Charles Dibble."

Finally, subparagraphs 122(c) and (d) allege that:

"The foregoing conduct and action on the part of the defendant plan constituted bad faith towards its insured on the part of the defendant plan in that it: (c) has failed to exercise the utmost good faith in the discharge of its contractual and fiduciary duties to the plaintiffs under the foregoing policy and governing law; and (d) has otherwise engaged in unfair claims and insurance practices in violation of statutory, contractual and fiduciary obligations."

A thorough examination of the plaintiffs' pleadings reveals that plaintiffs have failed to respond to the plan's preliminary objections concerning a breach of fiduciary duty discussed *supra*. It appears that the plaintiffs have erroneously responded to the *clinic's* preliminary objections, which do not deal with a breach of fiduciary duty. Instead, the plaintiffs should have responded to the *plan's* preliminary objections concerning a breach of fiduciary duty. However, in the interest of judicial economy and expediency, this court will now address the plan's preliminary objections and construe the plaintiffs' response

to the clinic's nonexistent preliminary objection as a response to the plan's objections. Thus, we recognize that Pennsylvania law holds that "members of a profession, *especially the medical profession,* stand in a confidential or fiduciary capacity as to their patients." *Alexander v. Knight,* 25 D.&C.2d 649, 655 (1961), *affirmed,* 197 Pa. Super. 79, 177 A.2d 142 (1962). (emphasis added)

Based on the above reasoning, this court finds that it is not clear and free from doubt that based upon this complaint the pleader will be unable to prove facts legally sufficient to establish a right to relief. Accordingly, the aforementioned preliminary objections are disposed of as follows: paragraph 104 dealing with plan's alleged fiduciary duty to the plaintiffs is denied; subparagraph 112(u) dealing with plaintiffs' claim for a breach of fiduciary duty is denied; subparagraph 122(c) alleging a lack of good faith in plan's dealings with the plaintiffs is denied; and subparagraph 122(d) alleging that plan engaged in unfair insurance practices is denied.

Additionally, paragraph 112's allegations of "gross, wanton, reckless, careless and negligent conduct and improper treatment on the part of defendant plan . . .," discussed *supra,* give rise to the punitive damages claim contained in Count II of the plaintiffs' complaint which has also been objected to by plan. Based on our above holding and in the interest of consistency, this court finds that the plan's preliminary objections to claims for punitive damages contained in Count II of the plaintiffs' complaint are denied. As we find that the above allegations of "gross, wanton and reckless" conduct on behalf of plan are sufficient if proven to a jury's satisfaction to support a cause of action for punitive damages.

# VI

The plan has also made preliminary objections alleging a lack of specificity. The objected to portion of the plaintiffs' complaint are subparagraphs 112(d), (e), (f), (g), (h), (k), (l), (m), (n), (o), (s), (w) and (x) and subparagraph 122(d). The objected to portions of subparagraph 112 give rise to the plaintiffs' claim for punitive damages which this court addressed *supra,* dealing with the plan's alleged failure to provide qualified, competent and/or experienced medical personnel, failed to adequately supervise the same and promulgated treatment practices and policies detrimental to plaintiff's treatment which this court held were sufficient to support a cause of action for punitive damages.

Specifically, in paragraph 112 of their complaint the plaintiffs have alleged that the gross, wanton, reckless, careless and negligent conduct and improper treatment on the part of the defendant plan consisted of the following:

"(d) failing to promulgate sufficient rules, regulations, and policies to ensure the delivery of competent medical services to plaintiff;

"(e) failing to follow prescribed rules, regulations, and policies and accepted medical standards and procedures in the care and treatment of plaintiff Charles Dibble;

"(f) failure to follow the medical code of ethics in promulgating rules, regulations and policies pertaining to the delivery of medical services of the plaintiff Charles Dibble;

"(g) failing to use proper methods and procedures to treat the plaintiff's medical treatment;

"(h) incorrectly treating the condition of plaintiff Charles Dibble;

"(k) permitting the defendant doctors to continue to work as employees, agents, servants and/or representa-

tives when they knew or should have known that their employees, agents, servants and representatives were unable to and incapable of performing the requirements of their respective employment;

"(l) failing to establish procedures and programs to determine whether the defendant doctors were fit and capable of properly performing the requirements of their respective employment;

"(m) failing to adequately observe, supervise and control the quality of care received by the plaintiff within its network of physicians and health care facility providers;

"(n) failing to ensure that the plaintiff received adequate medical attention necessary by a physician/specialist consultant;

"(o) developing and enforcing inappropriate policies and protocols which encourage providing a substandard care;

"(s) failing to provide appropriate preventive medical services;

"(w) violation of the "Health Maintenance Organization Act," 40 P.S. §1551, et seq.; and

"(x) violation of the provisions of chapter 9 of title 28 and chapter 152 of title 31 of the Pennsylvania Code pertaining to the Managed Care Organization and Preferred Provider Organizations."

The plan had also objected to subparagraph 122(d), which states:

"The forgoing conduct and actions on the part of the defendant plan constitute bad faith on the part of defendant plan towards its insured in that it:

"(d) has otherwise engaged in unfair claims and insurance practices in violation of its statutory, contractual and fiduciary obligations."

Under Rule 1028(a)(3) of the Pa.R.C.P. a preliminary objection on the ground of insufficient specificity of a

pleading requires that the pleading in question be tested as to whether it fully summarizes material facts. Namely, ultimate facts essential to support the claim must be pled or the plaintiff's complaint must inform the defendant, with accuracy and completeness, of the specific basis on which recovery is sought, so the defendant may know without question upon what grounds to make the defense. *Paz v. Commonwealth, Dept. of Corrections,* 135 Pa. Commw. 162, 166, 580 A.2d 452, 454 (1990). A court may order a pleading to be stricken if found to be insufficient, or it may grant the party leave to amend the pleading. Rule 1033 of the Pa.R.C.P. provides that a party, either by filed consent or by leave of court, may at any time amend his pleading. This right to amend is *liberally granted. W.I. Snyder Corp. v. Caracciolo,* 373 Pa. Super. 486, 492, 541 A.2d 775, 778 (1988).

After careful review of subparagraphs 112(d), (e), (f), (g), (h), (k), (l), (m), (n), (o), (s), (w) and (x) and subparagraph 122(d) of the plaintiffs' complaint objected to by the plan, we have determined that they make rather broad general statements without sufficient facts alleged in support thereof. Accordingly, plan's preliminary objections for lack of specificity to subparagraphs 112(d), (e), (f), (g), (h), (k), (l), (m), (n), (o), (s), (w) and (x) and subparagraph 122(d) of the plaintiffs' complaint are granted. However, plaintiffs' and their counsel are granted 20 days to amend their complaint within the confines of this opinion or alternatively to proceed without the stricken averments. This ruling is consistent with Pennsylvania's requirements that plaintiff plead sufficient facts to allow a defendant to adequately respond and leave to amend be liberally granted.

## VII

Count IV of the plaintiffs' complaint sets forth a cause of action in bad faith. Plaintiffs allege that "the defen-

dant plan has acted in an unreasonable manner and in bad faith in misrepresenting about insurance benefits under the policy." The plan has filed preliminary objections to subparagraph 122(a) contained in Count IV of the plaintiffs' complaint which purports to set forth a cause of action under the Pennsylvania Unfair Insurance Practices Act. While addressing actions under the UIPA, the Pennsylvania Supreme Court held as follows:

"These statutory prohibitions are enforced by the insurance commissioner of Pennsylvania, who is empowered to 'examine and investigate the affairs of every person engaged in the business of insurance in this state' to determine whether the Act has been violated. . . . *There is no evidence to suggest, and we have no reason to believe,* that the system of sanctions established under the Unfair Insurance Practices Act *must be supplemented by a judicially created cause of action . . . ." D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 507, 431 A.2d 966, 969-70 (1981). (emphasis added)

"It is clear that the UIPA and the Department of Insurance Regulations can only be enforced by the state insurance commissioner and *not by way of private action." Romano v. Nationwide Mutual Fire Insurance Company,* 435 Pa. Super. 545, 552, 646 A.2d 1228, 1232 (1994). (emphasis added) Thus, as the UIPA provides for enforcement by the insurance commissioner and not by an individual citizen in a private cause of action, this court must find that subparagraph 122(a) of Count IV of the plaintiffs' complaint fails to set forth a valid cause of action.

Therefore, the plan's preliminary objections to subparagraph 122(a) of Count IV of the plaintiffs' complaint are granted. Said subparagraph is hereby stricken for legal insufficiency as this court finds the above count fails

to establish the plaintiffs' right to relief against plan under the UIPA. Its enforcement is solely the responsibility of the insurance commissioner.

The plan has also objected to Count IV's claim for punitive damages. As subparagraph 122(a) is stricken, plan's preliminary objections to this portion of the count dealing with the issue of punitive damages has been rendered moot and need not be addressed. Additionally, this court has denied the plan's preliminary objections for legal insufficiency to subparagraphs 122(c) and (d) discussed *supra,* and we also deny the plan's preliminary objections to the remaining punitive damages claims contained in Count IV of the plaintiffs' complaint.

## VIII

The plan has also filed preliminary objections to Count III of the plaintiffs' complaint alleging breach of contract. Specifically, the plan contends that the "conduct on the part of the defendant plan and its agents is a breach of implied duties of good faith and fair dealing which is implicit in all insurance contracts." Paragraph 116 of the plaintiffs' complaint proceeds to allege that the aforementioned conduct caused Dibble to "incur additional expenses, suffer unnecessary delay and hardship and has otherwise caused damage that could have been avoided if the defendant [plan] had promptly and reasonably honored and complied with its statutory and contractual duties." The plan's preliminary objections assert that Count III of the plaintiffs' complaint should be dismissed because under Pennsylvania law, health care providers are neither warrantors nor guarantors of a cure, or the results of treatment rendered, absent an express promise to achieve a specific result. The plan's preliminary objections on this issue instruct the reader to see accompa-

nying memorandum of law. However, this court's examination of the same fails to reveal any additional elaboration on this issue.

As stated above, Count III of the plaintiffs' complaint alleges a breach by the plan of its obligation of good faith and fair dealing under their insurance contract with Dibble. The plaintiffs' allegations of breach of good faith and fair dealing by the plan clearly gives rise to a valid cause of action under Pennsylvania law since the Pennsylvania Supreme Court has long held that an insurer must act with the "utmost good faith" toward its insured. *Romano, supra* at 550, 646 A.2d at 1231.

We find that it is unclear, at this stage of the case, whether the plan acted in "good faith" while providing insurance coverage to Dibble. Thus, this court holds that the plan has not satisfied the high burden placed upon defendants who file preliminary objections in the nature of a demurrer. It is not clear and free from doubt that the plaintiffs will be unable to prove facts legally sufficient to establish their right to relief. Therefore, the plan's preliminary objections to plaintiffs' claims for breach of contract under Count III of the plaintiffs' complaint are denied. However, the plan has also objected to Count III's claim for punitive damages, which are generally not recoverable in contract actions.

"It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature. The law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based on breach of contract." However, treble damages may be recoverable. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 639 (Pa. Super. 1997), citing *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 143, 476 A.2d 928, 932 (1984). Thus, while it is possible for the plaintiffs to

be awarded treble damages under breach of contract, a claim for unlimited punitive damages is clearly not allowed on only contract principles under Pennsylvania law. Therefore, the plan's objections to plaintiffs' claim for punitive damages in Count III of the plaintiffs' complaint are granted and said claim is hereby stricken; however, the plaintiff is granted 20 days to amend and replead the contractual damages as treble damages.

## IX

The plan avers in its preliminary objections to Count V of the plaintiffs' complaint that said count fails to properly plead a cause of action for violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1. Under Pennsylvania law, the UTP/CPL makes it unlawful, inter alia, to engage in "unfair methods of competition and unfair or deceptive acts or practices." 73 P.S. §201-3. The plan contends that the plaintiffs' averments of a violation of the UTP/CPL are too vague and ambiguous to put the plan on notice of the true nature of the allegations made against it. Specifically, the objections indicate that the plaintiffs have failed to state how the alleged wrongful conduct is actionable under the UTP/CPL.

The plaintiffs maintain that the conduct and actions on the part of the plan constitute an unfair or deceptive practice that created the likelihood of confusion or misunderstanding on the part of the plaintiff and other insureds. Specifically, they contend that the "conduct and actions on the part of the defendant [plan] constitute active misfeasance by the defendant [plan] towards the insured, the plaintiff [Dibble]."

The UTP/CPL defines "unfair or Deceptive Acts or Practices" as "engaging in any other fraudulent conduct

which creates a likelihood of confusion or of misunder-standing." 73 P.S. §201-2(4)(xvii). While addressing the UTP/CPL the Pennsylvania Superior Court emphatically stated the following: "[a]s a statute for the prevention of fraud, it *must be liberally construed* to effect the purpose. . .

"Since the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, *it is to be construed liberally to effect* its object of preventing unfair and deceptive practices." *Kaplan v. Cablevision of PA Inc.,* 448 Pa. Super. 306, 313, 671 A.2d 716, 719 (1996). (emphasis added)

In view of the requirement for sustaining causes of action under the UTP/CPL for "unfair or deceptive acts or practices" such as "engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding," 73 P.S. §201-2(4)(xvii), we are granting the plan's preliminary objections to Count V of the plaintiffs' complaint. The plaintiffs have not pled a cause of action under the UTP/CPL, they merely stated in the most general terms that the plan's conduct and actions toward Charles constituted active misfeasance. A more specific recitation of facts constituting fraud and of the nature and causal relationship between the plan's alleged misconduct giving rise to the current action and the harm suffered by the plaintiffs is required to provide the plan with facts sufficient to prepare a defense. Further allegations of fraud must be pled with particularity. See Pa.R.C.P. 1019(b).

A court may order a pleading to be stricken if found to be insufficient, or it may grant the party leave to amend the pleading. Rule 1033 of the Pa.R.C.P. provides that a party, either by filed consent or by leave of court, may at any time amend his pleading. This right to amend is *lib-*

*erally granted. W.I. Snyder Corp. v. Caracciolo,* 373 Pa. Super. 486, 492, 541 A.2d 775, 778 (1988). (emphasis added)

Therefore, for these reasons and all those stated above, the aforementioned preliminary objections to Count V of the plaintiffs' complaint alleging legal insufficiency are granted. However, the plaintiffs and their counsel are granted 20 days to amend their complaint within the confines of this opinion or alternatively to proceed without the stricken count.

Furthermore, the plan has again objected to the punitive damages claim contained in Count V of the plaintiffs' complaint. "The clear language of the UTP/CPL allows an award of treble damages." *Metz v. Quaker Highlands Inc.,* 714 A.2d 447, 450 (Pa. Super 1998). Therefore, the plan's objections to the claim for punitive damages contained in Count V of the plaintiffs' complaint are granted and said claims are stricken. However, under Pennsylvania law the plaintiffs may obtain treble damages under the UTP/CPL "the trial court may in its discretion, award up to three times the actual damages sustained." *Johnson, supra* at 639. Therefore, the plaintiffs are granted 20 days to amend their pleadings and plead treble damages as opposed to unlimited punitive damages.

## X

The plan has filed preliminary objections in the form of a motion to strike paragraphs 39, 99, 100 and subparagraphs 112(f), (p) and (r) of the plaintiffs' complaint for failure to state a claim upon which relief can be granted.

This court will first address paragraphs 39, 99 and 100 and then proceed to dispose of the objections to sub-

paragraphs 112(f), (p) and (r). Paragraph 39 alleges in relevant part that: "[u]nder the aforementioned agreement, it is provided for a base salary to be paid to each of the Geisinger clinical physicians and further provided a formula whereby each of the physicians or physicians' groups would be paid based upon referrals made or not made by physicians to other groups or testing facilities both inside and outside of the facility and which allowed the various physicians . . . to receive additional bonuses for not prescribing tests, treatment and/or making appropriate referrals to subscribers such as the plaintiff Charles Dibble."

Paragraph 99 alleges in part that: "[a]t all times relevant, the defendant Fino and the other defendant doctors had a direct financial interest in limiting the medical care provided to the plaintiff Charles Dibble."

Paragraph 100 alleges in part that: "[a]t no time did the defendant plan and/or the defendant Fino and/or any of the defendant doctors advise the plaintiff of their direct financial interest in limiting medical care to the plaintiff."

The plan asserts that the above claims should be dismissed because they fail to state a cause of action for which relief can be granted.

"It is settled beyond peradventure, however, that the *judicial branch* is *precluded* by constitutional mandate from addressing the *ethical, moral, or social implications* of a health care program which indirectly provides a diminished compensation for a provider who deems further medical attention necessary or desirable. The fundamental prerogative and duty of considering and establishing social policy, including, of course, *the regulation of health care providers, is vested solely in the legislature.*" *McClellan v. Health Maintenance Organi-*

*zation of Pennsylvania,* 413 Pa. Super. 128, 134 n.6, 604 A.2d 1053, 1056 n.6 (1992). (emphasis added)

Based on the preceding case law, however, we find that it is not clear and free from doubt that the plaintiffs will be unable to prove facts legally sufficient to establish their right to relief. Accordingly, the aforementioned preliminary objections to paragraphs 39, 99 and 100 of the plaintiffs' complaint are denied. There are sufficient facts alleged which take these relevant paragraphs outside of social policy and regulation of health care providers. As the *Alexander* court has stated, the medical profession stands in a confidential or fiduciary capacity to their patients, and these allegations go to the heart of that fiduciary relationship. *Alexander, supra,* at 25 D.&C.2d at 655.

The plan also objected to subparagraph 112(p), (f) and (r) that state the following: paragraph 112 alleges in valid part that: "the gross, wanton, reckless, careless and negligent conduct and improper treatment on the part of the defendant plan is as follows: . . . (f) failure to follow the medical code of ethics in promulgating rules, regulations and policies pertaining to the delivery of medical services to the plaintiff Charles Dibble; . . . (p) providing financial and other disincentives to the providing of quality health care; . . . and (r) encouraging its network of physicians and health care facility providers, including the other defendants, to fail to make the appropriate referral of medical treatment . . . ."

Based on this court's reasoning discussed *supra* in disposing of the clinic's preliminary objections concerning punitive damages, we hold that the above language shall not be stricken because if the allegations were proven to the satisfaction of a jury it provides the requisite allegations needed for that jury to sustain a cause of action for punitive damages if proven at trial. Thus, for these reasons and all those stated above we find it is not

clear and free from doubt that the plaintiffs will be unable to prove the essential facts needed to establish their right to relief under subparagraphs 112(p) and (r) of the plaintiffs' complaint. Therefore, the plan's preliminary objections to subparagraphs 112(p) and (r) are denied.

Additionally, the plan's preliminary objections to subparagraph 112(f) of the plaintiffs' complaint are also denied as this court finds the allegation that the plan failed to "follow the medical code of ethics in promulgating rules, regulations and policies pertaining to the delivery of medical services to the plaintiff Charles Dibble" also does not deal with the social, moral or ethical implications of the plan's treatment policies but deals with the legalities of their medical malpractice case. Thus, we again hold that it is not clear and free from doubt that the plaintiffs will be unable to prove facts necessary to establish their right to relief under subparagraph 112(f) of the plaintiffs' complaint. Therefore, the plan's preliminary objections to subparagraph 112(f) are denied.

Thus, for all of the aforementioned reasons the plan's preliminary objections to subparagraphs 112(p), (r) and (f) of the plaintiffs' complaint are denied.

## XI

Finally, the plan has objected to the punitive damages claim contained in Count XIV of the plaintiffs' complaint seeking loss of consortium on behalf of plaintiff Rhoda Dibble. In the claim, Rhoda incorporates the foregoing paragraphs of the complaint at issue and alleges to have suffered damages "[a]s a direct and proximate result of the defendant's conduct as stated in the *preceding paragraphs*." (emphasis added)

As Rhoda's loss of consortium claim arises from the defendant plan's conduct towards plaintiff Charles Dibble, her claim is bound by the holdings of this court

contained in this memorandum. Thus, plan's preliminary objections to Rhoda's claims for punitive damages are granted in part and denied in part in a manner consistent with this court's holdings on Counts II, III, IV and V of the plaintiffs' complaint which were disposed of as follows: Count II denied; Count III granted; however, the plaintiffs are granted 20 days to amend their pleadings and plead treble damages; Count IV was stricken as to subparagraph 122(a) and denied to the remainder of Count IV; Count V granted; however, the plaintiffs are granted 20 days to amend their pleadings and plead treble damages. The rationale for each of these holdings was discussed in full *supra.*

While addressing the size of an award for a claim of loss of consortium the Pennsylvania Superior Court has held: "Consortium is an element of damages which has no market value and the amount to be awarded for its loss is particularly *for the common sense and sound discretion of the jury." Burns v. Pepsi-Cola Metropolitan Bottling Co.,* 353 Pa. Super. 571, 577, 510 A.2d 810, 813 (1986). (emphasis added)

The parties are to proceed in a manner consistent with this memorandum. An appropriate order follows.

## ORDER

And now, to wit, June 27, 1999, it is hereby ordered that the defendants' (clinic and plan) preliminary objections are granted in part and denied in part.

First, this court will address the clinic's four preliminary objections concerning the following:

"(1) The clinic's preliminary objections concerning punitive damages are denied.

"(2) The clinic's preliminary objections concerning corporate negligence are granted.

"(3) The clinic's preliminary objections concerning emotional distress are granted.

"(4) The clinic's preliminary objections concerning filing a more specific complaint with regard to those paragraphs and counts of the complaint delineating the various theories of negligence against the separate defendants are granted. Specifically, the plaintiffs are allowed 20 days to amend the following counts of their complaint: Count I, paragraph 109, subparagraphs (a), (b), (i), (bb) and (hh); Count II, paragraph 112, subparagraphs (a), (b), (j), (k), (l) and (q); Count IX, paragraph 137, subparagraphs (a), (b), (i) and (cc); and Count X, paragraph 139, subparagraphs (a), (b), (i) and (bb) or in the alternative to proceed without the stricken language in conformity with this opinion."

Second, this court will now address the plan's preliminary objections to the plaintiffs' complaint as follows:

"(1) The plan's preliminary objections concerning the claims for punitive damages are granted in part and denied in part as follows: Count II denied; Count III granted; however, the plaintiffs are granted 20 days to amend their pleadings and plead treble damages; subparagraph 122(a) of Count IV was stricken and therefore rendered moot and denied as to the remainder of Count IV; Count V granted; however, the plaintiffs are granted 20 days to amend their pleadings and plead treble damages; Count XIV granted in part and denied in part in a manner consistent with the above holdings.

"(2) The plan's preliminary objections to paragraph 104 of the plaintiffs' complaint for legal insufficiency are denied.

"(3) The plan's preliminary objections alleging a lack of specificity under Count II, subparagraphs 112(d), (e), (f), (g), (h), (k), (l), (m), (n), (o), (s), (w) and (x) and

Count IV, subparagraph 122(d) are granted. However, plaintiffs are granted 20 days to amend only the above mentioned subparagraphs contained in Count II of their complaint, within the confines of this opinion or alternatively to proceed without the stricken counts.

"(4) The plan's preliminary objections to Count III of the plaintiffs' complaint are denied, with the exception of Count III's punitive damages claim which has already been stricken by this court.

"(5) The plan's preliminary objections alleging legal insufficiency to subparagraph 122(a) of Count IV of the plaintiffs' complaint are granted, and the said subparagraph is hereby stricken.

"(6) The plan's preliminary objections alleging legal insufficiency to subparagraphs 122(c) and 122(d) of Count IV of the plaintiffs' complaint are denied.

"(7) The plan's preliminary objections to Count V of the plaintiffs' complaint are granted. However, plaintiffs are granted 20 days to amend their complaint within the confines of this opinion or alternatively to proceed without the stricken counts.

"(8) The plan's preliminary objections to paragraphs 39, 99, 100 and subparagraphs 112(p), (f), (r) and (u) of the plaintiffs' complaint are denied."

The parties are to proceed in a manner consistent with the memorandum and order.